without reimbursement. There is no showing that Arizona would not have had to pay relocation costs in case of a project wholly its own. Counsel say it would have been so obligated.

Defendant's motion for summary judgment is denied. Plaintiff's cross motion for summary judgment is granted. Judgment is entered for plaintiff in the amount of $81,361.18.

**EXCAVATION CONSTRUCTION, INC.**

v.

**The UNITED STATES.**

No. 408–71.

United States Court of Claims.

April 17, 1974.

Paul M. Rhodes, Washington, D. C., atty. of record, for plaintiff.

Thomas W. Petersen, Washington, D. C., with whom was Acting Asst. Atty. Gen. Irving Jaffe, for defendant.

Before SKELTON, KASHIWA and KUNZIG, Judges.

## OPINION

PER CURIAM:

This case comes before the court on plaintiff's exceptions to a recommended decision filed September 28, 1973, by Trial Judge Saul R. Gamer, Chief of the Trial Division, pursuant to Rule 134(h). The court has considered the case on the briefs and oral argument of counsel. Since the court agrees with the recommended decision, as hereinafter set forth, it hereby affirms and adopts the same as the basis for its judgment in this case. Therefore, plaintiff is not entitled to recover and the petition is dismissed. [See Keco Industries, Inc. v. United States, Ct.Cl., 492 F.2d 1200, decided February 20, 1974.]

## OPINION OF TRIAL JUDGE

GAMER, Trial Judge:

The Architect of the Capitol invited bids for the performance of the excavation and foundation work on the James Madison Memorial Building, Library of Congress project, and plaintiff was the second lowest bidder. Contending that the low bidder's bid contained disqualifying irregularities which made plaintiff entitled to the award, that plaintiff apprised the Architect of such defects in the low bid, but that the Architect nevertheless arbitrarily and capriciously proceeded to award the contract to the low bidder, plaintiff sues to recover its damages, including loss of profits, in the alleged amount of $950,000.

 It is settled that in cases of this kind this court will not award recovery of lost profits. The damages cannot exceed bid preparation costs. Heyer Products Co. v. United States, 140 F.Supp. 409, 412, 135 Ct.Cl. 63, 69 (1956); Keco Industries, Inc. v. United States, 428 F.2d 1233, 1240, 192 Ct.Cl. 773, 784 (1970). And, while "[f]inal decisions should be based on the particular circumstances of each case" (Keco Industries, Inc. v. United States, 428 F. 2d at 1240, 192 Ct.Cl. at 784), even such recovery by the aggrieved bidder is dependent upon a showing of arbitrary and capricious action by the Government in awarding the contract to another and thus failing to give honest consideration to the disappointed bidder's bid. Keco Industries, Inc. v. United States, *supra.* Furthermore, "the standard of proof to be applied in cases where arbitrary and capricious action is charged should be a high one." Keco Industries, Inc. v. United States, 428 F.2d at 1240, 192 Ct. Cl. at 784. "[I]n order to establish that the decision was arbitrary and capricious," the aggrieved bidder "must show that there was no reasonable basis for the decision" of the responsible Government official to award the contract to someone else. Continental Bus, Enterprises, Inc. v. United States, 452 F.2d 1016, 1021, 196 Ct.Cl. 627, 637–638 (1971); *cf.* M. Steinthal & Co. v. Seamans, 147 U.S.App.D.C. 221, 455 F.2d 1289 (1971).

In this case plaintiff, in its attempt to establish such arbitrary and capricious action, has not been able to meet this high standard of proof.

The bid invitation in question was the second issued for this project. The first was issued on December 1, 1970, the project thereunder being identified as "Job No. 7093," and the requirements of the Davis-Bacon Act[1] concerning minimum wages to be paid to laborers and mechanics being made applicable to the project. Plaintiff submitted a bid pursuant to this invitation. However, no award was made. The low bidder was Henry A. Knott, Inc., but upon the bid opening on January 15, 1971, the second low bidder (not the plaintiff) filed a protest against the award of the contract to Knott, resulting in the award being held up pending the resolution of the protest. Furthermore, on February 23, 1971, the President issued a Proclamation[2] suspending the application of the Davis-Bacon Act to Federal contracts. Since the bids that had been submitted were based upon the application of the Act, the Architect of the Capitol decided that no award would be made on Job No. 7093 and that the invitation would be reissued, with the Davis-Bacon Act specifically being made inapplicable to the proposed contract.

Accordingly, on March 8, 1971, the Architect invited new bids for the excavation and foundation work. Such project this time was designated as "Job No. 7117." Bids were to be opened on April 22, 1971.

However, on March 29, 1971, the President, by another Proclamation,[3] revoked the suspension of the application to Federal projects of minimum wage rates required by the Davis-Bacon Act.

1. 40 U.S.C. § 276(a) (1970).

2. No. 4031, 36 Fed.Reg. 3457.

3. No. 4040, 36 Fed.Reg. 6335.

Thereupon, the Architect, on April 5, 1971, amended the outstanding invitation by issuing "Addendum No. 1," which served to make the Act applicable to the project, and, on April 13, 1971, issued "Addendum No. 2," which made certain additions to the Davis-Bacon Act provisions added by Addendum No. 1.

On Thursday, April 22, 1971, the bids were opened. Three bids were submitted and again Knott was the low bidder. This time plaintiff was the second low bidder.

On the morning of the following day, Friday, April 23, 1971, an official of the plaintiff was permitted to examine the bids of the other two bidders. He was particularly desirous of ascertaining whether there were such defects in Knott's bid as to cause its disqualification, thus resulting in plaintiff's advancing to the position of low bidder. The examination was made in the office of Mr. Robert W. Kneesi, the Head of the Contracts and Specifications Division, Office of General Counsel.

Upon completing his examination, plaintiff's official informed Kneesi that he had discovered two defects in Knott's bid. The first related to Addendum No. 1. The cover sheets on the two addenda issued required bidders, in submitting their bids, to acknowledge their receipt, "giving the addendum number and its date." Knott's bid did acknowledge receipt of both addenda, but its acknowledgement of the first referred to it as "Addendum No. 1 dated March 8, 1971." However, its proper date was, as above shown, April 5, 1971. March 8, 1971, was, instead, the date of the Invitation for Bids. The Addendum had also referred to the March 8, 1971 date since it was such invitation (and the documents issued together therewith) that the Addendum was amending.

The second error related to the bid bond. Bidders were required to submit with their bids a guaranty, which could take the form of a bid bond of at least 10 percent of the bid, to insure execution of the contract and of performance and payment bonds. Knott had submitted such a bond, executed by itself as principal and the Planet Insurance Company as surety. The form on which the bond was executed contained a space, under the heading "Bid Identification," in which the "Invitation No." was to be inserted. In this space, there had been inserted "7093." As above shown, however, that had been the job number by which the first Invitation for Bids had designated the project. The correct designation of the project under the reissued second invitation was, as stated, Job No. 7117.

In response to an inquiry by Kneesi, who expressed the opinion that the two errors mentioned were minor informalities that would constitute an insufficient basis upon which to predicate a protest, plaintiff's representative stated that he intended to report his findings to other officials of plaintiff and that he did not know what, if any, action plaintiff would take with respect to the matter.

On Monday, April 26, 1971, another official of the plaintiff hand delivered a protest letter to the offices of the Architect of the Capitol. A copy of the letter was also submitted to the Comptroller General on the same day. At that time plaintiff did not know that during the late afternoon of Friday, April 23, 1971, the same day that plaintiff's official had earlier discovered the errors in the Knott bid and had reported them to Kneesi, the Architect of the Capitol had awarded the contract to Knott, and Knott had already executed the contract on April 26, 1971, prior to the filing of the protest.[4]

Upon learning these facts shortly thereafter plaintiff, feeling it was useless to press its protest against an award that had already been made, withdrew it and on May 14, 1971, filed the instant suit. It contends that the action of the Architect in so swiftly making

---

4. The Architect executed the contract on April 28 or 29, and notice to proceed to Knott was given on April 30, 1971.

the award to Knott prior to a definitive resolution by the Comptroller General of the effect of the defects in Knott's bid which plaintiff had discovered and pointed out to the Architect's representative, amounts to a discriminatory failure to give its bid the fair consideration that it merited.

From plaintiff's point of view, its feeling that the action of the Architect was, under the circumstances, unfairly precipitate, is understandable.[5] However, a consideration of the problems with which the Architect was faced at the time, and the reasons why he took the action he did, as testified to by the Architect himself, make plain that his action was neither arbitrary nor capricious.

First, the construction of the Madison Building was designed to be accomplished in four separate stages. The stage covered by the instant Invitation for Bids for the performance of the excavation and foundation work was the first. The commencement of the work on each of the three subsequent stages—the furnishing of the stone and marble, the construction of the superstructure, and the final finishing work and preparation for occupancy—was dependent upon the progress of the prior stage. The delay that had already been caused by the failure to make a letting under the first invitation and the necessity of re-advertising the first stage had set the construction schedule behind by approximately 3 months. Because of the rate of inflation then being experienced in the construction industry, the Architect felt that the longer the later stages were delayed the more expensive the entire project would become. For these reasons, the Architect was particularly interested in expediting the making of the award and the giving of the notice to proceed to the successful bidder as promptly thereafter as possible.

Second, as soon as the bids were opened on April 22, 1971, and Knott was revealed to be the low bidder, a Knott representative informed the General Counsel of the Architect of the Capitol of an impending strike in the steel industry. He suggested that if the Architect intended to make the award to his firm, the sooner the award was made, the sooner Knott could place its orders for the required steel materials, including the steel for bracing. For this reason, to the form of letter of award that had been prepared in advance of the opening—a standard procedure designed to expedite the mechanics of the letting of the contract after the bid opening— there was added to the Knott letter that it was "authorized at this time to proceed with placing your procurement orders for such steel as you require for the performance of your contract."

Third, there was special concern about eliminating as quickly as possible the annual outlay of approximately $2,000,-000 for rental of space that would be given up as soon as the Madison Building became available for occupancy.

The errors in the Knott bid which plaintiff's representative pointed out to Kneesi on the morning of April 23, 1971, were in fact promptly reported to the Architect and considered by him before he made the award the afternoon of the same day. Kneesi immediately informed the General Counsel, Mr. F. W. Winkelmann, who in turn promptly advised the Architect (who, in addition to being an architect and engineer, was also a lawyer). Kneesi, Winkelmann and the Architect agreed that the two defects in question were in the nature of minor informalities which the Architect could waive. A paragraph of the "Bidding Conditions" which formed a part of the Invitation for Bids specifically provided that "the Government reserves the right * * * to waive any informalities in bids received whenever such rejection or waiver is in the interest of the Government."

---

5. Under the terms of the Invitation for Bids, the Architect was given 60 days within which to make the award.

As to the use in the acknowledgment of the receipt of Addendum No. 1 of the incorrect date of the Addendum, they felt that the error was sufficiently cured by the proper acknowledgment of Addendum No. 2. Since all that Addendum No. 2 did was to amend Addendum No. 1 by adding certain provisions to the Davis-Bacon Act article added to the contract by Addendum No. 1, they felt that a proper acknowledgment of Addendum No. 2 plainly served to indicate the receipt of Addendum No. 1.

As to the error in the second bid bond's use of the job number by which the first Invitation for Bids designated the project, they felt that, in view of the fact that the second bond reflected the correct bid opening date for the project to which the bond related, there could be no question concerning the identification of the project to which the bid bond related and that neither Knott nor the surety could use the error as a basis for withdrawing. The same surety had been on the bid bond that Knott had submitted under the first invitation, and the same attorney-in-fact for the surety had executed both bonds.

However, despite the unanimity of opinion, the Architect felt that, before he made the award to Knott, Winkelmann should discuss the matter with an appropriate official of the General Accounting Office. Thereupon, Winkelmann contacted Mr. Robert H. Rumizen, the Assistant General Counsel of the General Accounting Office, in charge of the Procurement Law Section, Office of the General Counsel. The responsibilities of this Section included the handling of bid protest matters and the making of recommendations for final decisions with respect thereto by the Comptroller General. After explanation by Winkelmann of the two defects, Rumizen agreed that both errors were waivable minor informalities.[6]

■■ Upon being advised of Rumizen's opinion, the Architect decided to waive the two errors as minor informalities and, as previously intended for the reasons indicated, to proceed with the making of an immediate award to the low bidder.[7] Thereupon, he executed the letter of award, which was dispatched that same afternoon. At that time it was not known whether plaintiff would in fact file any formal protest.

Certainly, considering all the facts and circumstances, there can be no question of the *bona fides* of the Architect's action. There is no basis for any conclusion that plaintiff was the subject of arbitrary and capricious discrimination.

Plaintiff differs with the Architect as to the propriety of considering the errors in the Knott bid as waivable minor informalities, placing particular reliance upon the bid bond error. Plaintiff argues that the use of the wrong job number constituted a fatal misidentification of the project, which served to invalidate the bond. It is not necessary, however, to decide what the result of a law suit would be in the event of an attempted disavowal of the bond by either the principal or the surety. The problem is instead, whether the Architect was arbitrary and capricious in concluding that the error was a waivable minor informality. This was a matter of judgment which the Architect certainly did not exercise unreasonably. There is no statute or regulation that would make illegal or improper the acceptance of a bid backed by a bid bond containing an error such as was here involved. It is not every bid deviation or error which automatically compels a bid rejection. Albano Cleaners, Inc. v. United States, 455

---

6. Telephone requests for guidance from Government agencies with respect to such matters as Winkelmann discussed were commonplace, although the practice was for the General Accounting Office official to make plain that the informal advice given was not binding on the Comptroller General and did not affect what his ruling might be in the event a bid protest was filed.

7. Knott's qualifications as a responsible and qualified contractor had already been satisfactorily established as a result of the investigation that had been made on the first invitation.

F.2d 556, 197 Ct.Cl. 450 (1972). In the language of the court in Continental Bus. Enterprises, Inc. v. United States, *supra*, plaintiff has, considering the nature of the errors in the Knott bid upon which it is relying, failed to "show that there was no reasonable basis for the decision" of the Architect.[8]

Plaintiff contends the Architect should have awaited a formal ruling from the Comptroller General before making the award, or at least, after plaintiff filed its protest, before issuing the notice to proceed. But again plaintiff points to no statute or regulation which would prevent the Architect from awarding a contract under such circumstances as are here involved without first obtaining a formal decision from the Comptroller General. *Cf.* the Federal Procurement Regulations issued under the Federal Property and Administrative Services Act,[9] which provide that contracting agencies covered by the Regulations (the Architect of the Capitol being specifically excluded, 41 CFR § 1–1.203 (1972)) need not withhold awards pending final disposition by the Comptroller General of protests. Under § 1–2.407–8(b)(4) of the Regulations, the contracting officer may, despite the receipt of a protest, nevertheless make the award if he determines that "[t]he items to be procured are urgently required," or "[d]elivery or performance

will be unduly delayed by failure to make award promptly," or "[a] prompt award will otherwise be advantageous to the Government." 41 CFR § 1–2.407–8(b)(4).[10] Section 2.407–8(b)(3) of the Armed Services Procurement Regulations is identical. 32 CFR § 2.407–8(b)(3). Section 20.4 of the General Accounting Office Regulations also permits the making of an award despite the filing of a protest where "factors * * * will not permit a delay * * *." 4 CFR § 20.4 (1973). In this connection, the General Accounting Office will consider protests not only against a proposed award, but also against awards already made (4 CFR § 20.1) so that had plaintiff not withdrawn its protest, it apparently could have received a decision from the Comptroller General despite the fact that the Architect made the award before plaintiff filed its protest. The Comptroller General has ruled that awards made were improper and that contracts executed pursuant thereto should be cancelled. See John Reiner & Co. v. United States, 325 F.2d 438, 163 Ct.Cl. 381 (1963), cert. denied 377 U.S. 931, 84 S. Ct. 1332, 12 L.Ed.2d 295 (1964); Albano Cleaners, Inc. v. United States, *supra.*

For all of the reasons hereinabove set forth, plaintiff is not entitled to recover.

---

8. 38 Comp.Gen. 532, upon which plaintiff relies, is inapplicable. In that case, the bidder failed to submit any bid bond at all at the time of the bid opening. 39 Comp.Gen. 827, upon which plaintiff also relies, is also inapplicable. In that case the invitation required bid bonds in the amount of 20 percent of the contract price. The bond there in question was for only 10 percent. The Comptroller General held that the fact that the mistake was allegedly due only to clerical error was immaterial and that such failure to comply with the bid bond requirement represented a material deviation which could not be waived administratively.

On the issue concerning the addenda, see 34 Comp.Gen. 581, in which the bidder's failure specifically to acknowledge addenda 1

and 2 that had been issued, was held to constitute an informality that could be waived where the bidder's bid on an item that had been added by addendum No. 1, clearly indicated that he had received it, and where addendum No. 2 affected the cost of the work only to a negligible degree, if at all.

In its brief, plaintiff states with respect to the addenda issue that it "does not rely on the failure of the low bidder to properly acknowledge an addendum to the bid, standing alone, as being an irregularity that could not be waived, in the discretion of the Contracting Officer."

9. 41 U.S.C. §§ 251–60 (1970).

10. In this case the Architect himself was the contracting officer.