**AT & T TECHNOLOGIES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 186–87C.**

United States Claims Court.

Oct. 11, 1989.

---

**318**

Arthur Lazarus, Jr., Washington, D.C., for plaintiff; Melvin Riche, Howard J. Stanislawski and Richard D. Lieberman, of counsel.

Helene M. Goldberg, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

## OPINION

MARGOLIS, Judge.

This proposal preparation costs case is before the court on the defendant's motion for partial summary judgment and plaintiff's cross motion for partial summary judgment on the issue of damages. On September 19, 1988, the court granted the plaintiff's unopposed motion for partial summary judgment, ruling that the government was liable for the breach of its implied duty to fairly and honestly consider the plaintiff's offer. After a thorough review of the entire record, and after hearing oral argument, the court has concluded that the plaintiff may recover the proposal preparation costs incurred at its Guilford Center and Reynolda Road facilities, along with general and administrative expense and cost of facilities capital, if any, on those amounts. Plaintiff may not recover its pre-contract costs, selling costs, legal fees or costs of facilities capital on these amounts. Accordingly, the defendant's motion for partial summary judgment is granted in part and denied in part, and the plaintiff's cross motion for partial summary judgment is granted in part and denied in part.

## FACTS

On December 4, 1984, the defendant, United States, acting through the Government Printing Office (GPO) issued a request for proposals (RFP) soliciting offers to provide its Program 600–S integrated publishing system. The system specified was designed to encompass the creation, revision, storage and printing of publications for the Department of the Army.

Plaintiff was among several offerors that responded to the solicitation. On April 1, 1985, the plaintiff submitted its initial proposal to GPO. On October 14, 1985, plaintiff submitted its second, or intermediate cost proposal and its technical and management update to the GPO. On November 12, 1985, GPO amended the RFP, setting forth additional proposal requirements and calling for best and final offers (BAFOs) to be submitted by December 16, 1985.

Prior to the submission of BAFOs, the government required all offerors to perform a benchmark test. The plaintiff conducted its benchmark test at its Reynolda Road facility in Winston–Salem, North Carolina, on December 2–6, 1985. On December 16, 1985, the plaintiff submitted its BAFO. On January 10, 1986, the government notified the plaintiff that on January 9, 1986, it awarded the Program 600–S contract to Electronic Data Systems Corporation (EDS).

On June 19, 1986, GPO terminated its contract with EDS and reported contemporaneously to Congress, which conducted hearings on allegations of impropriety in the procurement, that this action was taken because "a serious technical error occurred in the procurement process leading up to award." Although initial indications were provided by the government that negotiations on Program 600–S would be reopened, the government informed the plaintiff on November 17, 1986, that the RFP was cancelled.

The plaintiff's complaint seeks to recover a total of $7,439,446 in damages. Plaintiff's alleged proposal preparation cost damages include: $668,474 incurred at the AT & T Federal Systems facility at Guilford Center in Greensboro, North Carolina; $1,153,245 incurred at the AT & T Network Systems facility at Reynolda Road, in Winston–Salem, North Carolina; and $598,123 incurred in load and local general and administrative (G & A) expenses applied to the Reynolda Road costs. On November 2, 1987, the Defense Contract Audit Agency's (DCAA) North Carolina Branch Office conducted an audit of the costs claimed in the plaintiff's complaint. The DCAA auditors

DISCUSSION

questioned all the plaintiff's claimed proposal preparation costs except the $668,474 in expenses incurred at the AT & T facility at Guilford Center.

In addition, the plaintiff seeks to recover other non-proposal preparation costs allegedly incurred in reliance on the RFP. These other reliance costs include: $3,060,859 incurred in purchasing equipment from Xyvision Incorporated, and in related labor costs; $309,224 incurred in AT & T's "selling expenses" account to cover a team of individuals who worked with the proposal team primarily to prepare for the the pre-BAFO benchmark test; $180,647 in legal fees expended in protests before the General Accounting Office (GAO) and General Services Board of Contract Appeals (GSBCA); $720,441 in G & A on the purchase of equipment from Xyvision and $46,697 in G & A on the legal fees associated with those costs; and $701,736 for the cost of money utilized in the proposal efforts. The DCAA questioned all of these other nonproposal related reliance interest costs in the November 2, 1987 audit.

The defendant adopted the conclusions of the DCAA auditors in challenging the plaintiff's costs. In particular, the the defendant contends that the items questioned by the DCAA are specifically not recoverable as proposal preparation costs under applicable Federal Acquisition Regulations (FAR) and Cost Accounting Standards (CAS). The plaintiff argues that the FAR and CAS rules governing the allowability of costs have no application to the implied-in-fact contract that arises from an offeror's submission of a conforming proposal in response to a government solicitation. The plaintiff maintains that the standard of recovery is much broader and includes all costs reasonably incurred in reliance on the government's solicitation. Accordingly, the plaintiff claims entitlement to recover all the costs reasonably incurred in reliance on the Program 600–S RFP.

## I. *Standards Governing Proposal Costs Awards*

The fundamental disagreement between the parties concerns the standards applicable to the plaintiff's recovery. Once the applicable standards are clarified, a determination of the items recoverable will logically follow.[1] The plaintiff asserts that the terms of the RFP and the applicable rules provided by the FAR and CAS do not limit recovery on the breach of an implied contract to fairly and honestly consider an offeror's proposal. In particular, the plaintiff urges that because "the implied contract for fair and honest consideration of all offers is a *different* contract from that which would have been in place had AT & T been awarded the Program 600–S contract, ..." plaintiff's recovery should be "determined by breach of contract principles, and not the FAR and the CAS." Plaintiff's Cross Motion for Partial Summary Judgment at 7 (emphasis in original).

The defendant contends that the plaintiff, in arguing that the FAR, the CAS and the solicitation have no application, is attempting to expand its recovery far beyond proposal preparation costs, the established measure of damages, to include its reliance interest, a category consisting of all amounts expended that relate in any way to the procurement. The defendant points out that the solicitation expressly incorporates the cost principles contained in the FAR and that the solicitation constitutes the offer which, when accepted by a contractor, forms the implied-in-fact contract. The terms of the solicitation/offer include the government's obligation to consider proposals fairly, *i.e.*, in accordance with the terms of the solicitation. Therefore, the defendant argues, the solicitation defines the scope of the implied-in-fact contract.

In addition, the defendant emphasizes that once a government contractor, such as the plaintiff here, has contracts covered by

---

1. Counsel for the plaintiff conceded at oral argument that if the court were to determine that the rules contained in the FAR and CAS and the relevant terms of the solicitation applied to its recovery, and that the definition of bid and proposal (B & P) costs in the FAR is the limit of its damages, then AT & T would not be entitled to recover any costs other than the proposal preparation costs incurred at Guilford Center and Reynolda Road. Tr. at 20–21.

**320**

CAS, all its contracts must be covered by CAS. The defendant states that none of the authorities cited by the plaintiff support its position that the FAR and CAS do not apply to the recovery of proposal preparation costs nor do they establish the broad standard urged as the law of this circuit. Moreover, the defendant contends that even if the court were to find that there is no legal requirement to adhere to the FAR and CAS, the court should nonetheless be guided by the principles contained therein because these carefully crafted well-established rules provide sound guidance for determining the plaintiff's recovery.

The court concludes that the cost principles contained in the FAR and CAS, and the applicable terms of the solicitation do apply to the recovery of proposal preparation costs. The plaintiff's arguments that these rules do not apply misperceive the whole theory underlying an award of proposal preparation costs for the breach of an implied-in-fact contract. It is well established that in order for a contractor to demonstrate that it has standing to recover bid and proposal (B & P) preparation costs it must show that it was injured by the government's illegal conduct. *Morgan Business Associates v. United States*, 223 Ct.Cl. 325, 332, 619 F.2d 892, 896 (1980). Because all offerors could not have received the contract, not all offerors are injured and have standing to seek B & P preparation costs as a result of an illegally conducted procurement. Thus, contractors are required to establish that they had a "substantial chance" of being awarded the contract and that their proposal was within "the zone of active consideration" by the government. *Id.* The nature of the injury a contractor suffers from the breach of the implied contract to fairly and honestly consider proposals is the wrongful denial of the award of the contract. As the Court of Claims stated, "[b]id preparation expenses are a cost of doing business that are 'lost' whenever the bidder *fails to receive a contract." Id.* 223 Ct.Cl. at 331, 619 F.2d at 895 (emphasis added).

Once a contractor establishes that it was so injured, it is entitled to recover the incurred B & P costs it would have recovered had it been awarded the contract. As this court recently stated in *Vulcan Engineering Co. v. United States*, 16 Cl.Ct. 84 (1988), "[t]he theory underlying the award of bid preparation costs is that the recipient was injured by the unjust denial of *recovery of such costs, which recovery presumably would have occurred had it obtained the contract." Id.* at 88 (emphasis added) (citing *Caddell Construction Co. v. United States*, 9 Cl.Ct. 610, 612–13 (1986)). Thus, the very injury for which the court compensates a contractor is the contractor's inability to recover its B & P costs as it rightfully would have, had it not been wrongfully denied the contract. The court must, therefore, apply the same principles to the recovery of proposal costs here as would be applied had the plaintiff actually received the contract. These principles, of course, include the rules contained in the FAR and CAS and the relevant provisions of the solicitation. It would be wholly inconsistent with the theory underlying the recovery of proposal preparation costs to rule otherwise.

Plaintiff's theory essentially urges that AT & T should be put in the position it would have been in had it never even submitted a proposal for the contract. This is not the standard of recovery. As the *Vulcan Engineering* court recognized, costs incurred in responding to government solicitations are "part of the ordinary costs of doing business with the government." 16 Cl.Ct. at 88. A plaintiff may not recover any and every cost related to a procurement where the government breached its implied obligation to fairly and honestly consider proposals. The contractor may recover only the B & P costs it would have recovered had it actually received the contract. Moreover, the same cost and accounting principles that would have applied to the B & P costs under the goods or services contract also apply to a B & P costs recovery for the breach of the implied contract.

The regulations make sufficient reference to the recovery of B & P costs by disappointed offerors to indicate their applicability to such awards. For instance, part 33 of the FAR, relating to protests, disputes and appeals, specifically identifies that FAR principles may be applied to an "implied contract." FAR § 33.203, 48 C.F.R. § 33.203. Part 31 of the FAR, relating to contract cost principles and procedures, acknowledges applicability of the cost principles to "various types of contracts," FAR § 31.100, 48 C.F.R. § 31.100, and provides a definition of allowable B & P costs. FAR § 31.205–18, 48 C.F.R. § 31.205–18.

■ There are other compelling reasons for adhering to the rules of the FAR and CAS and provisions of the solicitation. The stated objective of the cost principles, "[t]o achieve ... uniformity" in the application of cost principles and procedures, will best be served by holding that the FAR and CAS govern the recovery of B & P costs by disappointed offerors. FAR § 31.101, 48 C.F.R. § 31.101. Also, once a government contractor has contracts that are covered by CAS, all its contracts must be so covered. FAR §§ 30.301, 30.302, 48 C.F.R. §§ 30.301, 30.302. In addition, the FAR and CAS are carefully crafted and well-established rules which provide sound guidance for judging costs in government procurement cases. As the Court of Claims stated in *Lockheed Aircraft Corporation v. United States*, 179 Ct.Cl. 545, 557, 375 F.2d 786, 793 (1967), these cost principles are "a composite of sound accounting rules."

■ Finally, the solicitation itself, which incorporates by reference the FAR and CAS, is the very genesis of the implied contract for fair and honest consideration of proposals. The plaintiff asserts that the solicitation should have no bearing on its recovery under the implied-in-fact contract. If the court were to accept this assertion, the question would still remain: What are the terms of the implied-in-fact contract, and from where are they derived? The plaintiff provides no answer. Clearly, the terms of the implied-in-fact contract must be derived from the solicitation. Only by reference to the terms of the solicitation may the government's duty to fairly and honestly deal with offerors be fully defined. A determination of whether this duty was breached must necessarily be made with reference to these terms. As the Federal Circuit Court of Appeals stated, the implied contract arising from a solicitation "defines the way the government must deal with bids in the process of selecting a contractor." *Coastal Corporation v. United States*, 713 F.2d 728, 730 (Fed.Cir. 1983).

■ All of the terms of the solicitation, however, are not also terms of the implied-in-fact contract. Only those terms governing the activities of contractors prior to award form the implied-in-fact contract. Other terms governing later stages of the contractual relationship, such as those specifying performance requirements, are for the most part irrelevant during the pre-award period, and thus cannot be said to be a part of the implied-in-fact contract. This is not to say that the concept of fair and honest dealing, as it is normally understood in contractual matters, does not also form an independent basis for judging the government's conduct. Nor is holding that certain relevant terms of the solicitation apply to a recovery under the implied-in-fact contract irreconcilable, as plaintiff asserts, with the notion that the implied-in-fact contract is "preliminary and ancillary" to the goods or services contract. *Id.* Thus, the solicitation is the foundation of the implied-in-fact contract upon which the plaintiff seeks to recover, and it cannot be ignored.

## II. *Recovery of Proposal Costs*

■ Damages for the breach of the implied contract to consider offers fully and fairly are limited exclusively to bid and proposal preparation costs. As the Court of Claims explained in *Keco Industries, Inc. v. United States*, 192 Ct.Cl. 773, 785, 428 F.2d 1233, 1240 (1970), the "plaintiff should be allowed to recover *only* those costs incurred in preparing its technical proposals and bids." (Emphasis added).

The court later reaffirmed this view in *Keco II*, ruling that the plaintiff's right to be compensated was limited to "the expense of undertaking the bidding process." *Keco Industries, Inc. v. United States*, 203 Ct.Cl. 566, 573, 492 F.2d 1200, 1203 (1974). The "only remedy available to an unsuccessful bidder recognized by this court and its predecessor is bid preparation costs." *Contract Custom Drapery Service, Inc. v. United States*, 6 Cl.Ct. 811, 819 (1984). Thus, damages for an improper rejection of an offeror's proposal "cannot exceed bid preparation costs." *Excavation Construction, Inc. v. United States*, 204 Ct.Cl. 299, 301, 494 F.2d 1289, 1290 (1974).

The FAR cost principles define B & P costs as "the costs incurred in preparing, submitting, and supporting bids and proposals (whether or not solicited) on potential Government ... contracts." FAR § 31.205–18(a), 48 C.F.R. § 31.205–18(a). In *T & H Company*, 54 Comp. Gen. 1021, 1027–1028 (1975), the Comptroller General specified the costs that are recoverable as B & P costs for the breach of an implied contract to fairly and honestly consider a claimant's bid. The Comptroller General ruled that expenses incurred in researching specifications, reviewing bid forms, examining cost factors, and preparing draft and actual bids are compensable B & P costs. However, expenses "incurred long after the preparation of the bid, the bid opening and the initial erroneous actions of the agency" are not recoverable as B & P costs. *Id.* at 1027. Such costs were categorized as protest costs.

A.    Pre–Contract Costs

■ The plaintiff claims $3,781,300, including G & A expenses, in pre-contract costs. These costs include the purchase of equipment from Xyvision and various labor costs incurred in order to meet the requirements of the anticipated contract. In response to the defendant's interrogatories, the plaintiff conceded that none of costs were incurred for purposes of preparing the plaintiff's proposal but rather to place the plaintiff in a position to perform the contract had it received the award.

The defendant contends that these costs are not recoverable as proposal preparation costs because they were not incurred in preparing the proposal. In addition, the solicitation explicitly provided that "[t]he Government will not be liable for any costs or other liabilities incurred by a contractor until award is made and the contractor so notified." Also, the defendant argues that FAR section 31.109, 48 C.F.R. § 31.109, incorporated by reference in the solicitation, provides that pre-contract costs may not be recovered in the absence of an advance agreement with the government authorizing such costs.

In response, the plaintiff argues that the court should not be guided by the solicitation, or the FAR or CAS provisions on which the defendant relies. The costs plaintiff expended in purchasing equipment from Xyvision were reasonable, were induced by the government's insistence on a strict delivery schedule, and had they not been incurred, may have jeopardized award to the plaintiff for being nonresponsive. The plaintiff also argues that because all B & P costs are inherently pre-contract costs, rules limiting recovery to B & P costs should not prevent recovery of other pre-contract costs. The plaintiff points out, with respect to the government's argument concerning the need for an advance agreement, that FAR section 31.109(a) states that "an advance agreement is not an absolute requirement and the absence of an advance agreement on any cost will not, in itself, affect the reasonableness or allocability of that cost." 48 C.F.R. § 31.109(a).

The court concludes that the pre-contract costs incurred in purchasing equipment from Xyvision, and related expenses, are not recoverable proposal preparation costs. Plaintiff, by its own admission, states that these costs were not incurred for the purpose of preparing its proposal, but rather in anticipation of performing the contract had it received the award. As previously discussed, the court concludes that applicable terms of the solicitation and the FAR and CAS do apply in determining which costs plaintiff may recover. The solicitation explicitly provides that the government will not be liable for pre-contract costs.

Regarding the plaintiff's argument that B & P costs are inherently pre-contract costs, the court agrees. However, B & P costs are a more specific and narrow category of pre-contract costs, and they are the only pre-contract costs recoverable for the government's breach of its implied duty to fairly and honestly consider proposals. The plaintiff also argues that it needed to purchase the equipment at issue so that its proposal would be responsive or technically acceptable. The defendant is correct in observing that the solicitation at issue here was a negotiated procurement where responsiveness is not a criterion for denying award. *See DeMat Air, Inc. v. United States*, 2 Cl.Ct. 197, 202 (1983).

Finally, the plaintiff states that had the competitive environment been fair, it would have been prepared to absorb its pre-contract costs because it was aware of the risk that the contract might be awarded to another company. The plaintiff fails to provide a logical connection establishing why this distinction should somehow entitle it to an award in excess of the legally recognized standard—proposal preparation costs. Although the government's conduct was admittedly egregious, and the plaintiff was unmistakenly injured thereby, an award of B & P costs does not serve any punitive function that would entitle a plaintiff to an expanded recovery. Thus the plaintiff's distinction between its willingness to absorb pre-contract costs in the event another offeror was awarded the contract from the situation where the government acts illegally has no meaningful impact on the measure of its recovery.

### B. Costs Incurred at the AT & T Reynolda Road Facility

The plaintiff seeks to recover $1,153,245 in proposal preparation costs incurred at its Reynolda Road facility, plus $598,123 in load and G & A expenses which it claims are allocable to these proposal preparation costs. In its November 1987 audit, the DCAA questioned these costs because the accounting methods employed by the plaintiff were found to violate CAS 402.40, 4 C.F.R. § 402.40 and FAR section 31.202(a),

48 C.F.R. § 31.202(a), both of which state the following: "No final cost objective shall have allocated to it as a direct cost any cost, if other costs incurred for the same purpose in like circumstances have been included in any indirect cost pool to be allocated to that or any other final cost objective." The DCAA auditors found that AT & T charged B & P costs both as direct labor charges for Reynolda Road and as indirect charges to the G & A pool for the Federal Systems facility in Guilford.

The defendant contends that the plaintiff may not recover these costs because, as a government contractor obligated to operate under the accounting methods provided in the CAS, the plaintiff must employ uniform accounting practices. Because the plaintiff accounted for B & P costs differently at its two facilities and violated CAS 402, the defendant states that the plaintiff should be denied recovery of these costs. Neither the defendant nor the DCAA auditors, however, appear to contend that these costs are not otherwise recoverable proposal preparation costs or that they were not in fact incurred. The sole basis for denial of the recovery seems to be the plaintiff's departure from strict adherence to the CAS.

The plaintiff once again contends that the cost principles of the FAR and CAS should not govern. But as previously stated, the court rejects this argument. The plaintiff also contends, however, that even assuming that the FAR and the CAS do apply, these amounts may nonetheless be recovered. The plaintiff argues that the CAS 402 requirement that costs incurred under "like circumstances" be treated similarly is not applicable. Normally, when B & P costs are incurred, the government does not violate its duty of fair dealing. However, when, as here, it does violate this duty, then these "unlike circumstances" allow a contractor to treat its incurred B & P costs differently. The plaintiff finds support in Interpretation No. 1 of CAS 402, 4 C.F.R. § 402, Appendix, which allows different cost treatment of "costs incurred in preparing, submitting, and supporting proposals pursuant to a specific requirement

of an existing contract," because such costs "are considered to have been incurred in different circumstances."

Finally, the plaintiff analogizes the deviations from the cost principles allowed in termination for convenience cases to the present situation where the government fails to fairly and honestly consider proposals. The Armed Services Board of Contract Appeals (ASBCA) recognizes in termination for convenience cases that costs otherwise treated as indirect charges, pursuant to the terms of the contract, that can be identified with recoverable effort, may be treated as direct costs to produce a more equitable result. The plaintiff contends that the same principle should apply equally to B & P cost claims in connection with a disappointed offeror's action where the contract never even matured. Moreover, the plaintiff maintains that none of the costs incurred at Reynolda Road were transferred in any way, directly or indirectly, to charges at the Federal Systems facility, thus excluding the possibility of double charging.

The court agrees with the plaintiff that these proposal preparation costs may be recovered. The relevant inquiry here is not how such expenditures may have been previously classified, but, whether the costs in question are truly proposal preparation costs, and if so, whether they were actually incurred in connection with the procurement at issue. The court concludes that these requirements are satisfied. Although the court will without hesitation demand adherence to the principles of the FAR and CAS by contractors, it can allow departures in very limited situations where justice so requires. The plaintiff convincingly demonstrated that this is such a case.

■ The court concludes that contractors who normally charge B & P costs indirectly to G & A and load pools should be allowed in limited cases to convert those charges to direct labor costs, if the underlying base to which those costs were normally to be charged is no longer present, such

as when a contract is terminated for convenience, or when as here, the contractor is dealt with unfairly before the contract even comes into existence. In *Amplitronics, Inc.*, ASBCA No. 20545, 76–1 B.C.A. ¶ 11,760 at 56,122, the Board applied this principle and stated: "It is appropriate to convert costs normally charged indirectly to direct costs in a termination situation where the absence of a normal base for allocating indirect costs otherwise prevents charging a fair share of such costs to the contract." Likewise, in *Esprey Manufacturing Company, Inc.*, ASBCA No. 3635, 59–1 B.C.A. ¶ 2169 at 9,461, the Board stated:

> It is illogical to talk about leaving this cost in a pool when, under the facts of this case, there will be no allocation of that pool to the contract since there are no direct costs with which to allocate it. We allow Engineering Salary in its entirety. We likewise allow Overhead on above in its entirety. It is apparent that appellant did incur some overhead expense in its performance of the letter order and we find it reasonable in this case to let them follow [the engineer's] cost.

The court concludes that these principles have application here.

Moreover, the purpose of CAS 402 and FAR section 31.202 is to maintain integrity in government contract accounting by preventing double charging for the same costs in both direct and indirect accounts. CAS 402.20 states: "Adherence to these cost accounting concepts is necessary to guard against the overcharging of some cost objectives and to prevent double counting." 4 C.F.R. § 402.20. The regulations accomplish this result by requiring contractors to employ uniform accounting methods and to ensure like accounting treatment for like costs incurred under like circumstances. Aside from the perfunctory cautions of the DCAA auditors, there are no real indications that a danger of double charging exists here.[2]

---

**2.** In response to the court's questions, counsel for the defendant stated at oral argument that in the defendant's view, there existed no danger of

double charging for the proposal costs incurred by the plaintiff at its Reynolda Road facility. Tr. at 11. Counsel for the plaintiff represented

■ There is every indication that plaintiff's Reynolda Road proposal costs were actually incurred and were reasonably expended preparing for the submission of plaintiff's proposal. The plaintiff explained that B & P efforts are not normally conducted at its Reynolda Road facility, and that this fact explains its departure from standard accounting methods. The court is satisfied with this explanation. Although without question, deviations from the FAR and CAS may prejudice a contractor's claim, it appears that this very narrow and specific departure should be allowed here to avoid injustice and to fully compensate the plaintiff for its injury in accordance with the legally accepted measure. Thus, the plaintiff may recover the proposal costs incurred at its Reynolda Road facility, plus appropriately calculated load and G & A expenses.

C. Selling Costs

■ Plaintiff also seeks to recover $309,224 in selling costs. These expenses were incurred in connection with the performance of the benchmark test at Reynolda Road prior to the BAFO submission. Robert R. Wyatt, a manager at AT & T's Guilford Center facility, stated in an affidavit that this effort consisted of reviewing activities from "the Government's perspective" where individuals "generally played the role of the customer." Plaintiff's Cross Motion for Partial Summary Judgment, App. at 7. The defendant contends that plaintiff's selling costs are not proposal preparation costs and are therefore not recoverable. Plaintiff essentially admits that the selling costs it seeks to recover are not proposal preparation costs, but asserts that they may be recovered as part of its reliance interest.

The defendant is correct that the plaintiff may not recover selling costs in this action. As previously stated, the sole measure of the plaintiff's recovery is proposal preparation costs. Under FAR section 31.-205–38, 48 C.F.R. § 31.205–38, selling costs are defined as costs directly attributable to

marketing the contractor's products and services. Selling activity can include such "broad categories" as sales, promotions, negotiations, liaison with Government personnel, as well as bid and proposal costs. The Court of Claims in *General Dynamics Corporation v. United States*, 202 Ct.Cl. 347 (1973), distinguished between selling costs, which are those costs *"directly* attributable to marketing efforts," *id.* at 360 (quoting *General Dynamics Corporation*, ASBCA Nos. 12814 & 12890, (1968) (emphasis in original)), from B & P costs which are incurred in "preparing bids or proposals." *Id.* at 358 (quoting Armed Services Procurement Regulation (ASPR) § 15.205.3). Because the selling costs at issue here are specifically distinguishable from B & P costs, and B & P costs are the only damages that may be recovered for the breach of the government's duty of fair and honest dealing, the plaintiff here may not recover its selling costs.

D. Legal Fees

■ The plaintiff seeks to recover $180,647 in legal fees in connection with its protest of the award of the Program 600–S contract before the GAO and GSBCA, plus $46,697 in G & A expense on these fees. Plaintiff contends that it is entitled to recover these fees because they were incurred as a result of the government's illegal conduct in the procurement and because they may be considered direct costs that would have been recoverable on the contract had it prevailed in the other forums. The defendant argues that legal fees cannot in any way be considered B & P costs and therefore may not be recovered. The defendant also states that in the absence of a law specifically waiving the sovereign immunity of the government for the award of these fees, the court has no jurisdiction to make such an award.

The plaintiff may not recover legal fees. Such fees, incurred well after contract award, are not B & P costs but are rather protest costs. *T & H Company,* 54 Comp. Gen. at 1027. Plaintiff may recover only

that in the event the court should award these costs, load and G & A costs will be calculated to

prevent a double recovery on overhead. Tr. at 34.

proposal preparation costs in this action. The defendant is correct in pointing out that, although the plaintiff could have recovered these costs before the GAO or the GSBCA had plaintiff prevailed in those forums, plaintiff did not prevail. Nor is there a specific waiver of sovereign immunity to provide for such recovery in the Claims Court. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). The plaintiff's arguments to recover these costs are simply without merit.

### E. Cost of Money

■■■■■ Finally, plaintiff seeks to recover $701,736 as damages for the "cost of money." The defendant contends that plaintiff may not recover these costs because they are no more than a disguised claim for prejudgment interest, which is specifically unallowable. The defendant also argues that the plaintiff failed to adhere to the only legitimate formula for calculating such costs, the formula for cost of facilities capital set forth in CAS 414, 4 C.F.R. § 414, FAR § 31.205–10, 48 C.F.R. § 31.205–10. The plaintiff responds that the cost of money is part of its reliance interest and may be fully recovered. In the alternative, the plaintiff argues that if the court were to rule that the CAS and FAR apply to its recovery, it would nonetheless be entitled to recover some as yet undetermined amount as the costs of facilities capital on the base costs to which it is otherwise entitled.

The plaintiff's claim for cost of money as presented is not acceptable. To the extent that the plaintiff seeks to recover these funds under the theory that they represent its reliance interest, the court rejects that broad standard as inappropriate for this proposal preparation action. The plaintiff may recover the cost of facilities capital as an indirect cost item, if and only if, it calculates such costs in strict compliance with CAS 414 and FAR § 31.205–10. Moreover, plaintiff may recover costs of facilities capital, if any, only on those base costs which the court concluded it may recover. Thus, plaintiff may recover cost of facilities capital only for the proposal preparation costs incurred at its facilities in Guilford Center and Reynolda Road. It may not recover costs of facilities capital on its pre-contract costs, its selling costs or legal fees.

### CONCLUSION

The court concludes that the plaintiff may recover only its proposal preparation costs, and that such recovery is governed by the rules set forth in the FAR and CAS and by the applicable terms of the solicitation. Accordingly, the plaintiff may recover the proposal preparation costs incurred at its Guilford Center and Reynolda Road facilities, along with G & A and facilities capital costs, if any, on those amounts. The plaintiff may not recover its pre-contract costs, selling costs or legal fees. Accordingly, the defendant's motion for partial summary judgment is granted in part and denied in part, and the plaintiff's cross motion for partial summary judgment is granted in part and denied in part. The parties shall file a joint report with the Clerk's Office stipulating to the plaintiff's damages within 30 days from the date of this opinion.