**MONCHAMP CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 523–89C.**

United States Claims Court.

March 27, 1990.

Sam Zalman Gdanski, Spring Valley, N.Y., for plaintiff.

J. Andrew Jackson, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## ORDER

NETTESHEIM, Judge.

This case is before the court over plaintiff's opposition on defendant's motion to dismiss pursuant to RUSCC 12(b)(4) on the ground that the complaint fails to state a claim upon which relief can be granted. Argument is deemed unnecessary.

## FACTS

All well-pleaded facts in the complaint pertinent to defendant's motion have been accepted as true. In fall 1987 five bidders submitted bids on contract No. 055268, a sale of Black Forest Fire Salvage Timber by the United States Department of Agriculture's Forest Service (the "Forest Service"), Lassen, California. Monchamp Corporation ("plaintiff") was the third highest bidder. Following the nonresponsibility determination of the highest bidder, Bill Rice ("Rice"), the Forest Service on March 30,

1988, issued an award of the contract to Sierra Fiber Fuels, Inc. ("Sierra"), the second highest bidder, at the price bid by the highest bidder. On that same day, Sierra and Wayne Neatherlin, Sierra's President, individually as assignor, assigned to Paul Warner Enterprises ("Warner"), in trust as security for indebtedness, all of Mr. Neatherlin's interest, rights, and obligations under and by virtue of the Black Forest Fire Salvage Timber sale contract No. 055268 between assignor as purchaser and the Forest Service as seller. The assignee, Warner, had also bid on the contract, but ranked as the fourth highest bidder. Plaintiff alleges, and the court accepts as true for purposes of ruling on defendant's motion, that Sierra did not have the financial ability to perform the contract and that both Sierra and Warner lacked a timber harvest license in 1988 or 1989.

On March 30, 1988, this assignment in trust was approved by the contracting officer pursuant to clause BT8.4 of the contract awarded to Sierra, which in pertinent part provided:

> Performance by Other than Purchaser: The acquisition or assumption by another party under an agreement with Purchaser of any right or obligation of Purchaser under this contract shall be ineffective as to Forest Service until Forest Service has been notified of said agreement and has given written approval by the forest officer who approved this contract, his successor or superior officer....

On June 8, 1989, plaintiff filed a claim with the contracting officer arguing that the Forest Service had made a *de facto* award to the fourth highest bidder, since Mr. Neatherlin of Sierra lacked financial ability and was being assisted by Warner. The contracting officer denied the claim and plaintiff appealed to the United States Department of Agriculture Board of Contract Appeals (the "Board"). The Board dismissed the appeal (which plaintiff had attempted to withdraw), describing plaintiff as a disappointed bidder and not as a contractor, because the Board's jurisdiction was limited to appeals by contractors. Plaintiff filed a similar suit in this court on

September 25, 1989, to recover lost profits of $2,809,000.00. In response to defendant's motion, plaintiff restated its projected profits at $3,150,509.00 and asks as an alternative measure to recover an unspecified amount as its costs of preparing its bid proposal.

## DISCUSSION

■ Plaintiff asserts a breach of the Forest Service's duty to fairly consider its bid under the solicitation. As the Court of Claims stated in *Excavation Construction, Inc. v. United States*, 204 Ct.Cl. 299, 494 F.2d 1289 (1974), any recovery in such a case is "dependent upon a showing of arbitrary and capricious action by the Government in awarding the contract to another and thus failing to give honest consideration to the disappointed bidder's bid...." *Id.* at 302, 494 F.2d at 1290. (citing *Keco Industries, Inc. v. United States*, 192 Ct.Cl. 773, 784, 428 F.2d 1233, 1240 (1970)). According to plaintiff, the approval of the assignment in trust from Sierra to Warner constituted a breach of a binding legal obligation on the part of the Forest Service to award the timber sale contract to plaintiff. As a result of the Forest Service's decision not to award the contract to plaintiff, it claims losses in the form of anticipatory profits.

■ Defendant has understandable difficulty in identifying plaintiff's theory of recovery. Plaintiff's action cannot be considered a bid protest, since this court may entertain a challenge to the proposed award of a contract only if filed before contract award. *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1368 (Fed. Cir.1983).

■ Defendant argues that the existence of a binding contract between plaintiff and the Forest Service is a prerequisite to a claim seeking future profits. Defendant further contends that plaintiff is not a "contractor" under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601(4), 609(a)(1) (1982) (the "CDA"), since plaintiff is not a party to the Forest Service contract and thus may not base its action upon the CDA. Defendant is correct. The Federal Circuit

has held that the CDA does not embrace the contract to fairly consider a bid. *Coastal Corp. v. United States*, 713 F.2d 728 (Fed.Cir.1983).*

As clarified by plaintiff's opposition brief, the complaint can be read to seek the costs of preparing its bid due to the Forest Service's alleged failure to consider it fairly. *See Keco Indus. v. United States*, 192 Ct.Cl. at 784–85, 428 F.2d at 1240. Plaintiff does not contest the Forest Service's action, following the nonresponsibility determination regarding the highest bidder, Rice, to offer the sale to the next highest bidder, Sierra, at the initial high bidder's price. However, plaintiff complains that the approval of the assignment from Sierra to Warner violated the Competition in Contracting Act, 41 U.S.C. § 253 (Supp. V 1984), and the Anti–Assignment Act, 41 U.S.C. § 15 (1982), and that the Forest Service violated applicable procurement regulations in deeming Sierra responsible.

■ Defendant rejoins that the Forest Service's action was specifically provided for in the contract and was permissible by law. Clause BT8.4 of the Timber Sale contract between Sierra and the Forest Service explicitly provides that the purchaser is allowed to transfer any right or obligation under the contract, provided the Forest Service has been notified of the transfer agreement and has given its written approval of the agreement. In this case Sierra gave notice of the assignment in trust between it and Warner to the contracting officer who approved the transfer. The contractual prerequisites to a proper transfer were satisfied since the contract permitted the very assignment that occurred.

■ The wording of the Anti–Assignment Act, 41 U.S.C. § 15, *prima vista* seems to support plaintiff's contention. This statutory provision invalidates all transfers of contracts with the Government to any other party:

No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned....

The provisions of the preceding paragraph shall not apply in any case in which the moneys due or to become due from the United States or from any

* Plaintiff relies heavily on *Solar Turbines, Inc. v. United States*, 16 Cl.Ct. 304 (1989), to support its claim for anticipatory profits based upon a breach of contract theory. In *Solar* plaintiff and the Navy entered into a contract relating to the design and production of a Rankine Cycle Energy Recovery (RACER) System for use on Navy vessels. The validity of this agreement was not disputed by either party. At stake, however, was the last of 35 modifications, a memorandum of understanding which provided that in the event plaintiff's costs and fees reached a $55,000,000 cost limitation, the contractor had two options: The contractor could require the Navy to terminate the contract for convenience or, in the alternative, complete the project at its own cost. In addition, this modification provided the Navy with an unpriced option to have the contractor design and manufacture two additional RACER units. The contractor continued work on RACER and received payments totalling $55,000,000. Thereafter, the Navy's Procurement Contracting Officer unilaterally terminated the contract for convenience of the Government. In its suit for anticipatory profits, plaintiff invoked a breach of contract theory. It claimed that the amendment to the contract was invalid because the Navy fraudulently induced it to accept the $55,000,000 cap, thereby engaging in a series of misrepresenta- tions. Moreover, plaintiff took the position that the Government had a binding legal commitment to enter into future contracts.

The Claims Court ruled that if a termination for convenience is the product of fraud or deceit, a government contractor is not limited to damages under the termination for convenience clause. Where fraud or deceit is proved, the contractor may obtain traditional breach of contract damages. Anticipatory profits are recoverable if the resulting damage is foreseeable at the time of agreement and are the proximate result of the breach. In addition, a plaintiff may seek anticipatory profits relating to future contracts if there is a binding legal commitment on the part of the Government to enter into future contracts. 16 Cl.Ct. at 316–17.

While these legal principles may be correct, they do not apply to the case at bar. Plaintiff is unable to demonstrate any contractual obligation between it and the Forest Service apart from the duty to consider plaintiff's bid fairly. Unlike the contractor in *Solar,* plaintiff does not have standing to sue under the CDA. Plaintiff is not a party to a government contract and therefore cannot secure traditional breach of contract damages.

agency or department thereof, under a contract providing for payment aggregating $1,000 or more, are assigned to a bank, trust company, or other financial institution, including any Federal lending agency....

However, the Supreme Court's interpretation in *Spofford v. Kirk*, 97 U.S. 484, 490, 24 L.Ed. 1032 (1878), makes it clear that the statute is intended for the benefit of the Government and serves two purposes: first, to prevent persons of influence from buying up claims against the United States, which might then be improperly urged upon officers of the Government; and second, to enable the United States to deal exclusively with the original claimant instead of several parties. *See Patterson v. United States*, 173 Ct.Cl. 819, 823, 354 F.2d 327, 329 (1965).

In *Tuftco Corp. v. United States*, 222 Ct.Cl. 277, 614 F.2d 740 (1980), the court explained the evolution of the interpretation of this act:

Shortly after their enactment the statutes were strictly construed to invalidate nearly all assignments. Over time, the courts, sensitive to the purpose of the statutes, exempted from their broad reach certain assignments when it was concluded assignment did not present the danger the statutes were designed to obviate. Accordingly, the courts have held selected assignments to be by operation of law and exempt from the statute's prohibition, such as transfers by intestate succession or testamentary disposition....

*Id.* at 285, 614 F.2d at 744–45 (citing *Erwin v. United States*, 97 U.S. 392, 24 L.Ed. 1065 (1978)).

The key case in regard to the Anti–Assignment Act was *Maffia v. United States*, 143 Ct.Cl. 198, 163 F.Supp. 859 (1958), wherein the court stated that "[d]espite the bar of the Anti–Assignment statute (41 U.S.C. § 15), the Government, if it chooses to do so, may recognize an assignment...." 143 Ct.Cl. at 203, 163 F.Supp. at 862. It is well settled that the Government may waive the provisions of the Anti–Assignment Act, as it did in the instant case by including clause BT8.4 into the Timber Sale contract with Sierra. Therefore, the Forest Service's action, in approving the assignment in trust from Sierra to Warner, was reasonable and permissible.

■ Plaintiff's reliance on the Competition in Contracting Act is equally unavailing. The Forest Service sells timber under independent sale authority. 16 U.S.C. § 472a(a)–(i) Therefore, federal procurement statutes and regulations are inapplicable to Forest Service timber sales. *See Prineville Sawmill Co., Inc. v. United States*, 14 Cl.Ct. 186, 192, *rev'd on other grounds*, 859 F.2d 905 (Fed.Cir.1988). Apparently, the Forest Service does make nonresponsibility determinations, as it did in rejecting Rice's bid after a financial review conducted by the Small Business Administration. Plaintiff has alleged adequately that Sierra was nonresponsible and should not have been offered the sale at the price bid by Rice. The materials appended to defendant's motion indicate that in order to demonstrate its financial ability to perform before receiving contract award, Sierra exercised an option, under the Forest Service's own procedures for assuring financial responsibility, to forego financial review by providing the Forest Service with a stand-by letter of credit to guarantee its performance under the contract. The Forest Service thereafter awarded the contract to Sierra based on what it deemed to be adequate guarantees and prepayments. It appears that defendant could establish its entitlement to summary judgment on this basis if the case were to proceed further. However, defendant did not move on the ground that plaintiff could prove no set of facts establishing that Sierra was not a qualified bidder under the Forest Service's procedures for determining financial responsibility.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss is denied without prejudice to its renewal. Plaintiff shall file an amended complaint by April 10, 1990, complying with RUSCC 8(a)(2)–(3) and specifying the amount of bid prepara-

tion costs that it is prepared to prove, should plaintiff wish to pursue its action for costs of preparing its bid. Should plaintiff fail to comply with this order, the Clerk of the Court shall dismiss the complaint.

IT IS SO ORDERED.