**INTERSTATE ROCK PRODUCTS, INC., Plaintiff,**

v.

**THE UNITED STATES, Defendant,**

**Gilbert Western Corp., Intervenor–Defendant.**

No. 01–408 C.

United States Court of Federal Claims.

Sept. 17, 2001.

Michael M. Payne, Fort Washington, Pennsylvania, attorney for plaintiff.

Delisa M. Sanchez, Washington, D.C., with whom were Stuart E. Schiffer, Acting Assistant Attorney General, David M. Cohen, Director, Brian M. Simkin, Assistant Director, for defendant. John M. Rippley, Federal Highway Administration, of counsel.

Douglas L. Patin, Washington, D.C., attorney for intervenor-defendant. Catherine R. Baumer and Robert J. Symon, Washington, D.C., of counsel.

## OPINION

BUSH, Judge.

This pre-award bid protest is before the court on cross-motions for summary judgment. The solicitation at issue was for award of a project that entails the grading, drainage and asphaltic surfacing of 16.33 kilometers of roadway in the Bryce Canyon National Park. Plaintiff, Interstate Rock Products, Inc. (Interstate; Interstate Rock), challenges the Federal Highway Administration's (FHWA) determination that its bid was rendered nonresponsive due to the omission of the penal sum on the required bid

bond. For the reasons set forth below: (1) Interstate Rock Products, Inc.'s Motion for Summary Judgment on the Administrative Record and request for injunctive relief is denied; (2) Defendant's Cross–Motion for Summary Judgment Upon the Administrative Record and Opposition to Plaintiff's Motion for Summary Judgment on the Administrative Record and for Injunctive Relief is granted; and (3) Gilbert Western Corporation's Opposition to Interstate Rock Products, Inc.'s Motion for Summary Judgment upon the Administrative Record and Gilbert's Cross–Motion for Summary Judgment is granted.

## BACKGROUND

### I. Factual Background

Interstate Rock is a Utah corporation with its principal place of business in Hurricane, Utah. On April 1, 2001, FHWA issued a pre-solicitation notice stating that solicitation documents were to be made available on April 10, 2001, for a project consisting of the grading, drainage and asphaltic surfacing of 16.33 kilometers of roadway in the Bryce Canyon National Park. This solicitation was identified as "UT PRA BRCA (10)2, Rainbow Point Rim Road." AR at 8.[1]

Of particular significance in this case is a provision contained under block 13 of Standard Form 1442 of the solicitation that provides:

> A bid guarantee of not less than 20 percent of the bid amount is required with any bid in excess of $25,000. If the bidder fails to accompany the bid with the required bid guarantee, such failure may require rejection of the bid. See Contract Clause 52.228–1, Bid Guarantee. If the bid guarantee is a bid bond, it must be submitted on Standard Form 24.

AR at 16.

Also germane to this case is a contract clause included in the solicitation based on Federal Acquisition Regulation (FAR) 52.228–1, Bid Guarantee, that provides as follows:

---

1. AR refers to citations in the Administrative Record submitted by defendant on July 23, 2001.

(a) Failure to furnish a bid guarantee in the proper form and amount, by the time set for opening of bids, may be cause for rejection of the bid.

(b) The bidder shall furnish a bid guarantee in the form of a firm commitment, e.g., bid bond supported by good and sufficient surety or sureties acceptable to the Government, postal money order, certified check, cashier's check, irrevocable letter of credit, or, under Treasury Department regulations, certain bonds or notes of the United States. The Contracting Officer will return bid guarantees, other than bid bonds, (1) to unsuccessful bidders as soon as practicable after the opening of bids, and (2) to the successful bidder upon execution of contractual documents and bonds (including any necessary coinsurance or reinsurance agreements), as required by the bid as accepted.

(c) The amount of the bid guarantee shall be 20 percent of the bid price or $3,000,000, whichever is less.

(d) If the successful bidder, upon acceptance of its bid by the Government within the period specified for acceptance, fails to execute all contractual documents or furnish executed bond(s) within 10 days after receipt of the forms by the bidder, the Contracting Officer may terminate the contract for default.

(e) In the event the contract is terminated for default, the bidder is liable for any cost of acquiring the work that exceeds the amount of its bid, and the bid guarantee is available to offset the difference.

AR at 49.[2]

On April 19, 2001, plaintiff apparently notified its bonding agent, Mr. Budd O. Scow, of Certified Insurance Services, Inc., that it needed a bid bond in the penal sum of 20% of the bid amount in order to respond to FHWA solicitation UT PRA BRCA (10)2 on May 10, 2001. In turn, the bonding agent ordered from the United States Fidelity & Guaranty Company (USF & G) a bond in the penal sum of 20% of the bid amount. In this order, the bonding agent referenced the project number, UT PRA BRCA 10(2), and advised the surety that the engineer's estimate for the project was $5–10 million. USF & G is an approved surety under United States Treasury Department Regulations.

On April 25, 2001, the surety issued a proper bid bond in the penal sum of 20% of the bid amount. A copy of this bid bond is attached to the complaint as exhibit 2 and is also included in the AR at 498. Because, however, parts of this bid bond were illegible, apparently due to lack of clarity in facsimile transmission, the plaintiff's bonding agent asked the surety to replace the April 25, 2001 bond with one that was more legible.

The surety then issued a more legible copy of the bond that was identical to the April 25, 2001 bond in all but one critical respect. In the new version of the bid bond, the penal sum was left blank, apparently through inadvertent error. It was this new version of the bid bond, lacking the inclusion of the penal sum, that plaintiff submitted with its bid. The bid bond states "[w]e, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum." AR at 281.

On May 10, 2001, sealed bids for the subject solicitation were opened. Interstate Rock was the apparent low bidder with a bid price of $10,463,922.60. The only other bid was submitted by Intervenor, Gilbert Western Corporation of West Jordan, Utah (Gilbert; Gilbert Western), and was in the amount of $11,003,340.00. The government engineer's estimate was for $10,485,182.50.

Of particular importance in this case is FHWA's May 21, 2001 letter to plaintiff stating that its bid had been declared nonresponsive "due to the omission of the penal sum on [Interstate's] bid bond." AR at 494. At-

---

**2.** The FAR provision on which provision (c) is based provides: "(c) The amount of the bid guarantee shall be ___ percent of the bid price or $___, whichever is less." FAR 52.228–1(c). FAR 28.101–2 provides that "[t]he bid guarantee amount shall be at least 20 percent of the bid price but shall not exceed $3 million."

tached to this letter were copies of the following two Comptroller General Decisions in support of the agency's decision: *Matter of M/V Constructor Co.*, B–232572, Sept. 20, 1998, 88–2 CPD ¶ 272, 1988 WL 227922; *Matter of Kennedy Electric Co., Inc.*, B–239687, May 24, 1990, 90–1 CPD ¶ 499, 1990 WL 277996.[3] This letter was written by Ms. Suzanne M. Schmidt, P.E., Contract Development Engineer for FHWA.

On May 22, 2001, Mr. Michael T. Madsen, Controller of Interstate Rock, responded via letter on behalf of Interstate Rock and offered to provide FHWA with a copy of the original bid bond that had been furnished by the surety that contained no omissions and was complete although it was partially illegible. In this letter, plaintiff articulated its view that "[t]he surety's obligation was manifested prior to the bid, and the clerical error then, only represented a minor informality and the bid should be responsive." AR at 497. In this letter, plaintiff also presented an argument that its case is distinguishable from those attached to FHWA's May 21, 2001 letter for the following reasons:

[W]e can present a properly filled out bid bond that was prepared prior to the bid. Only after noting that the form was not as clear as desired was the bond changed and the typing error done. Since the intent of the surety is a primary issue, this additional documentation shows that the bid bond was in force at the time of submission.

*Id.*

Plaintiff further stated that it would appreciate any reconsideration, as:

It seems to [the Controller of Interstate] that the FAR was created and stands for equity in the bidding process. The Government was not at risk if this project were awarded to us or if we did not want to stand behind our bid. The size of this project is considerable in the framework of our business. Therefore, we would like to discuss with you and/or others in your organization our rights to protest your decision if our bid remains nonresponsive. *Id.*

On May 24, 2001, Ms. Schmidt for FHWA responded by letter to plaintiff. The letter states that:

We regret very much having to reject your bid due to the defective bid bond. However, we are bound to follow the Comptroller General precedent in such matters; and the precedent is quite clear. We previously sent you Comptroller General Decisions B–239687 and B–232572.

Enclosed are copies of additional decisions B–219591, *Matter of F & F Pizano*, and B–232714, *Matter of R.D. Construction*. All of these decisions rule that a bid accompanied by a bid bond on which no penal sum has been inserted is nonresponsive and must be rejected.

Your explanation regarding the circumstances of our receipt of the blank bond does not alter our decision. The determination of whether a bid bond is acceptable must be based on the bid bond as received at the time of bid opening. Post bid opening statements or documents received after the bid opening cannot cure a defect of this type. See the enclosed copies of B–272109, *Matter of Carter Construction*, and B–227948, *Matter of Pioneer Construction*.

We recognize that this decision is distressing to your company. However, the integrity of the competitive bidding process requires that we follow consistent rules in such matters.

AR at 502.

The second bid on the solicitation at issue, submitted by Gilbert Western, was also rejected because its bid was unbalanced and the agency could not ascertain whether Gilbert's bid price was reasonable. On June 1, 2001, the agency cancelled the solicitation in accordance with FAR 14.404–1(c), concerning cancellation of invitations after opening, and stated in the attached Determination and

---

**3.** These cases are not attached to the copy of the letter that appears in the AR at 494. The letter does, however, refer "to copies of the attached two Comptroller General Decisions dated September 20, 1988, and May 24, 1990." AR at 494. Copies of the cases are attached to the copy of the letter that is attached to the complaint at exhibit 5. Also these cases are referenced by case number in the May 24, 2001 letter from Ms. Suzanne M. Schmidt, P.E. of FHWA to Mr. Michael T. Madsen of Interstate Rock. AR at 502.

Finding that the procurement would be continued as a negotiated procurement involving the two original bidders. The agency also concluded that, in accordance with FAR 14.404–1(e)(1), the acquisition should be completed through negotiation.

On June 6, 2001, FHWA sent a letter to Mr. Donald N. Stratton, President of Interstate, wherein it requested plaintiff to advise the agency as to whether Interstate was "interested in continuing to compete for this project through negotiations with our office." AR at 543. FHWA sent an identical letter to Gilbert Western.

On June 11, 2001, Mr. Stratton of Interstate replied via a letter to Ms. Schmidt of FHWA. The letter states "[p]ursuant to your request dated June 6, 2001, our firm is interested in continuing to compete for the above project through negotiations." AR at 546. Also on that date, Gilbert Western submitted a letter to FHWA indicating its "interest in continuing to compete for [the] project and [its] intent to negotiate on the above referenced project per [FHWA's] letter dated 6/6/01." AR at 545.

On June 12, 2001, Gilbert Western filed a protest with the General Accounting Office (GAO): (1) arguing the cancellation pursuant to FAR 14.404–1(a)(1) was improper; (2) challenging the agency's decision to complete the acquisition through negotiation; and (3) arguing that its bid price was not unreasonable. The GAO dismissed this protest, in *Gilbert Western Corp.*, July 16, 2001, B–288035 following the filing of the protest in this court.

## II.   Procedural Background

Plaintiff filed its complaint for temporary restraining order, preliminary and permanent injunctive relief on July 13, 2001. On this date, plaintiff also filed its motion for preliminary injunction and memorandum of points and authorities in support of plaintiff's motion for preliminary injunction, permanent injunction and declaratory judgment. On July 17, 2001, the court held a teleconference in which all the parties participated. During this teleconference, counsel for the government represented to the court that the agency would defer any further action on the

procurement pending this court's issuance of its opinion on the merits. Also on July 18, 2001, Gilbert Western filed its motion to intervene and memorandum in support thereof. On July 18, 2001, this court issued an order granting Gilbert Western's motion to intervene and setting forth the agreed-upon schedule of proceedings for this matter. The parties agreed that this matter is susceptible to resolution by addressing the merits of the case without first having a separate determination on plaintiff's request for injunctive relief. Consequently, the parties have submitted a full complement of briefings on this matter to the court. Oral argument in this matter was heard on September 10, 2001. During oral argument, counsel for Gilbert Western withdrew a request that the court direct the defendant to reinstate the original solicitation with the intervenor-defendant as the lowest responsive and responsible bidder.

## DISCUSSION

### I.   Jurisdiction and Applicable Standards

#### A.   Standard for Pre–Award Procurement Challenges

This court has jurisdiction over this bid protest pursuant to the Administrative Dispute Resolution Act of 1996, Pub.L. No. 104–320 § 12, 110 Stat. 3870, 3874–75 (1996) (amending the Tucker Act, 28 U.S.C. § 1491(b)), which grants the court:

> jurisdiction to render judgment on an action by an interested party objecting to the solicitation by a Federal Agency for bids or proposals for a proposed contract ... or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

Under the standard of review applicable in bid protests, an agency's procurement decisions will be upheld unless shown to be "arbitrary, capricious, an abuse of dis-

cretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); 28 U.S.C. § 1491(b)(4). In determining whether an agency's actions were arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, the court must ascertain whether " 'the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.' " *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1332 (Fed.Cir.2001) (quoting *Saratoga Dev. Corp. v. United States,* 21 F.3d 445, 456 (D.C.Cir.1994)). The " 'disappointed bidder bears a heavy burden of showing that the award decision had no rational basis.' " *Id.* (internal quotations omitted). In undertaking its analysis, the court is not to substitute its judgment for that of the agency, even if reasonable minds could reach differing conclusions. *CRC Marine Servs., Inc. v. United States,* 41 Fed.Cl. 66, 83 (1998). The court recognizes that the agency possesses wide discretion in the application of procurement regulations. *See Impresa Construzioni,* 238 F.3d at 1333. *See also Honeywell, Inc. v. United States,* 870 F.2d 644, 648 (Fed.Cir.1989) (stating that " '[i]f the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations" (citation omitted)). The proper focus of this court's scrutiny is the agency's articulated rationale for the decision and the administrative record underlying it. *Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

## B. Standard for Entering Judgment on the Administrative Record

This action is before the court on plaintiff's motion for summary judgment on the administrative record; the government's cross-motion for summary judgment; and intervenor's cross-motion for summary judgment. Summary judgment is designed to secure the " 'just, speedy, and inexpensive determination of every action.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting FRCP 1). Summary judgment is appropriate where

there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if it would affect the outcome of the suit. *Id.* at 248, 106 S.Ct. 2505. Cross motions for summary judgment on the administrative record pursuant to Rule 56.1 are treated the same as a motion for summary judgment under RCFC 56(a). *Chas H. Tompkins Co. v. United States,* 43 Fed.Cl. 716, 719 (1999) (citing RCFC 56(a)); *Nickerson v. United States,* 35 Fed.Cl. 581, 588 (1996), *aff'd,* 113 F.3d 1255 (Fed.Cir.1997). Having cross-moved, each party bears the burden of establishing entitlement to judgment. *See Celotex,* 477 U.S. at 322–24, 106 S.Ct. 2548.

## C. Standard for Permanent Injunction

■ Interstate also requests that this court issue a permanent injunction. If a plaintiff demonstrates that a procurement was unlawful, the issue then before the court is whether to grant permanent injunctive relief. To obtain a permanent injunction, plaintiff must establish: (1) actual success on the merits; (2) that it will suffer irreparable injury if injunctive relief were not granted; (3) that, if the injunction were not granted, the harm to plaintiff outweighs the harm to the government and third parties; and (4) that granting the injunction serves the public interests. *Hawpe Constr., Inc. v. United States,* 46 Fed.Cl. 571, 582 (2000) (citations omitted); *Ellsworth Assocs., Inc. v. United States,* 45 Fed.Cl. 388, 393 (1999) (citation omitted).

It is against this backdrop that the court will review Interstate's challenge to FHWA's decision that its bid was rendered unresponsive due to the omission of the penal sum.

## II. Merits

### A. The rationality of the agency's determination that plaintiff's bid was nonresponsive due to the omission of the penal sum on the required bid bond

In this case, the parties have presented substantially identical versions of the facts

and the court finds that there are no material facts in dispute.

Plaintiff asserts that its bid was unreasonably and improperly rejected as nonresponsive due to the omission of the penal sum. Interstate also contends that, accordingly, the agency's cancellation of the original solicitation was improper because it submitted a low, responsive, and responsible bid that entitled it to an award under the terms of the solicitation. It is plaintiff's position that the contracting officer's reliance on GAO precedent resulted in a conclusion that was not in accordance with the law, was based upon unfounded speculation as to the enforceability of a bid bond that omits the penal sum, and therefore lacked a rational basis. Plaintiff seeks an order enjoining the FHWA from proceeding with the procurement, or from awarding a contract to any other bidder; urges the court to conclude that plaintiff's bid is responsive; and seeks an order directing defendant to reinstate the original solicitation with plaintiff as the lowest responsive and responsible bidder. The government and intervenor-defendant contend that the FHWA's rejection of Interstate's bid as nonresponsive was rational and in accordance with the law. Defendant seeks an order denying plaintiff's motion for an injunction upon the grounds that defendant is entitled to judgment as a matter of law based upon the administrative record and requests that this court deny Interstate's request for an order directing the government to cancel the negotiated bid and reinstate the sealed bid. Gilbert Western sought an order of the court compelling the agency to (1) cure an alleged ambiguity in the specifications for this procurement and (2) complete this acquisition process through sealed bid rather than by negotiation. The government contends this court should deny these requests by Gilbert Western. However, as stated during oral argument, counsel for Gilbert Western withdrew these requests.

The issue posed by the facts of this case is whether Interstate's bid was rendered nonresponsive by the omission of the penal sum on the bid bond. In analyzing this question, it is first necessary to examine the relevant FAR and solicitation provisions.

FAR 14.301(a) provides:

To be considered for award, a bid must comply in all material respects with the invitation for bids (IFB). Such compliance enables bidders to stand on an equal footing and maintain the integrity of the sealed bidding system.

■ Accordingly, when a bid fails to conform with the invitation for bids, it will be rejected if it is nonconforming in a *material* respect. It follows that when a bid's only defect is an immaterial non-conformity, it is responsive. John Cibinic, Jr. & Ralph C. Nash, Jr., FORMATION OF GOVERNMENT CONTRACTS, 539 (3d ed.1998). *See also* 48 C.F.R. § 14.402–2 (stating that "[a]ny bid that fails to conform to the essential requirements of the invitation for bids shall be rejected"). An immaterial conformity is termed a minor informality. *Id.* The term "minor informality" is defined in 48 C.F.R. § 14.405.

A minor informality or irregularity is one that is merely a matter of form and not of substance. It also pertains to some immaterial defect in a bid or variation of a bid from the exact requirements of the invitation that can be corrected or waived without being prejudicial to other bidders. The defect or variation is immaterial when the effect on price, quantity, quality, or delivery is negligible when contrasted with the total cost or scope of the supplies or services being acquired. The contracting officer either shall give the bidder an opportunity to cure any deficiency resulting from a minor informality or irregularity in a bid or waive the deficiency, whichever is to the advantage of the Government. Examples of minor informalities or irregularities include failure of a bidder to—

(a) Return the number of copies of signed bids required by the invitation;

(b) Furnish required information concerning the number of its employees;

(c) Sign its bid, but only if . . . .

48 C.F.R. § 14.405.

Explaining the function of bid bonds, FAR 28.001 states that a bid guarantee is:

a form of security assuring that the bidder (1) will not withdraw a bid within the period specified for acceptance and (2) will execute a written contract and furnish required bonds, including any necessary co-insurance or reinsurance agreements, within the time specified in the bid, unless a longer time is allowed, after receipt of the specified forms.

This section defines the penal sum or penal amount as:

[T]he amount of money specified in a bond (or a percentage of the bid price in a bid bond) as the maximum payment for which the surety is obligated or the amount of security required to be pledged to the Government in lieu of a corporate or individual surety for the bond.

48 C.F.R. § 28.101–2 provides that:

(a) The contracting officer shall insert a provision or clause substantially the same as the provision at 52.228–1, Bid Guarantee, in solicitations or contracts that require a bid guarantee or similar guarantee.

* * * * * *

(b) The contracting officer shall determine the amount of the bid guarantee for insertion in the provision at 52.228–1 (see 28.102–2(a)). The amount shall be adequate to protect the Government from loss should the successful bidder fail to execute further contractual documents and bonds as required. The bid guarantee amount shall be at least 20 percent of the bid price but shall not exceed $3 million. When the penal sum is expressed as a percentage, a maximum dollar limitation may be stated.

In this case, the solicitation contained a provision that specifically required a bid guarantee. It provided:

A bid guarantee of not less than 20 percent of the bid amount is required with any bid in excess of $25,000. If the bidder fails to accompany the bid with the required bid guarantee, such failure may require rejection of the bid. See Contract Clause 52.228–1, Bid Guarantee. If the bid guar-

antee is a bid bond, it must be submitted on Standard Form 24.

AR at 16.

The contract clause in the solicitation at issue was based on FAR 52.228–1, which provides:

Bid Guarantee (SEP 1996)

(a) Failure to furnish a bid guarantee in the proper form and amount, by the time set for opening of bids, may be cause for rejection of the bid.

(b) The bidder shall furnish a bid guarantee in the form of a firm commitment, e.g., bid bond supported by good and sufficient surety or sureties acceptable to the Government, postal money order, certified check, cashier's check, irrevocable letter of credit, or, under Treasury Department regulations, certain bonds or notes of the United States. The Contracting Officer will return bid guarantees, other than bid bonds, (1) to unsuccessful bidders as soon as practicable after the opening of bids, and (2) to the successful bidder upon execution of contractual documents and bonds (including any necessary coinsurance or reinsurance agreements), as required by the bid as accepted.

(c) The amount of the bid guarantee shall be 20 percent of the bid price or $3,000,000, whichever is less.

(d) If the successful bidder, upon acceptance of its bid by the Government within the period specified for acceptance, fails to execute all contractual documents or furnish executed bond(s) within 10 days after receipt of the forms by the bidder, the Contracting Officer may terminate the contract for default.

(e) In the event the contract is terminated for default, the bidder is liable for any cost of acquiring the work that exceeds the amount of its bid, and the bid guarantee is available to offset the difference.

AR at 49.[4]

FAR 52.228–1 provides that failure to furnish a required bid guarantee prior to bid opening "may be cause for rejection of the bid." Title 48 C.F.R. § 28.101–4 provides that in sealed bidding "noncompliance with a solicitation requirement for a bid guarantee requires rejection of the bid, except in the situations described in paragraph (c) of this subsection when the noncompliance shall be waived."

FAR 28.101–4(a) provides that "[i]n sealed bidding, noncompliance with a solicitation requirement for a bid guarantee requires rejection of the bid, except in the situations described in paragraph (c) of this subsection when the noncompliance shall be waived." In turn, FAR 28.101–4(c) delineates specific situations wherein noncompliance with a solicitation requirement for a bid guarantee "shall be waived ... unless the contracting officer determines in writing that acceptance of the bid would be detrimental to the Government's interest." These situations are when:

(1) Only one offer is received. In this case, the contracting officer may require the furnishing of the bid guarantee before award;

(2) The amount of the bid guarantee submitted is less than required, but is equal to or greater than the difference between the offer price and the next higher acceptable offer;

(3) The amount of the bid guarantee submitted, although less than that required by the solicitation for the maximum quantity offered, is sufficient for a quantity for which the offeror is otherwise eligible for award. Any award to the offeror shall not exceed the quantity covered by the bid guarantee;

(4) The bid guarantee is received late, and late receipt is waived under 14.304;

(5) A bid guarantee becomes inadequate as a result of the correction of a mistake under 14.407 (but only if the bidder will increase the bid guarantee to the level required for the corrected bid);

(6) A telegraphic offer modification is received without corresponding modification of the bid guarantee, if the modification expressly refers to the previous offer and the offeror corrects any deficiency in bid guarantee;

(7) An otherwise acceptable bid bond was submitted with a signed offer, but the bid bond was not signed by the offeror;

(8) An otherwise acceptable bid bond is erroneously dated or bears no date at all; or

(9) A bid bond does not list the United States as obligee, but correctly identifies the offeror, the solicitation number, and the name and location of the project involved, so long as it is acceptable in all other respects.

48 C.F.R. § 28.101–4(c).

None of these circumstances under which the government must waive non-compliance with a solicitation requirement for a bid guarantee apply to this case, which concerns the omission of the penal sum on the bid bond.

Also, directly beneath the box in which the penal sum of the bid bond is supposed to be inserted, the bid bond (Standard Form 24) at issue provides:

Obligation:

We, the Principal and Surety(ies) are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally.... If no limit of liability is indicated the limit of liability is the full amount of the penal sum.

AR at 30.

In this case, FHWA found that the omission of the penal sum in the applicable block on the bond form rendered the bid nonresponsive, and rejected Interstate's bid. In

---

4. As stated, the FAR provision on which provision (c) is based provides: "(c) The amount of the bid guarantee shall be ___ percent of the bid price or $___, whichever is less." FAR 52.228– 1(c). FAR 28.101–2 provides that "[t]he bid guarantee amount shall be at least 20 percent of the bid price but shall not exceed $3 million."

support of its decision, FHWA relied on decisions of the Comptroller General holding that a bid is rendered nonresponsive when the penal sum is omitted on a required bid bond. It is "the usual policy, if not the obligation, of the procuring departments to accommodate themselves to positions formally taken by the General Accounting Office with respect to competitive bidding." *Honeywell, Inc. v. U.S.*, 870 F.2d 644, 647–48 (1989) (citing *John Reiner & Co. v. United States*, 325 F.2d 438, 442, 163 Ct.Cl. 381 (1963), *cert. denied*, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964)).[5] GAO decisions are, of course, not binding on this court. *See Honeywell*, 870 F.2d at 649.

In *Allen County Builders Supply*, B–216,-647, 85–1 CPD ¶ 507 (1985), 1985 WL 50695, GAO found a bid bond to be defective where no penal sum had been inserted on the bond as required on the invitation for bids. *Id.* at 505. This opinion, which has been followed in subsequent GAO opinions, constitutes a reversal of GAO's earlier line of opinions wherein it held that the penal sum of a bid bond could be inferred from a reference on the bond to the IFB number. *Id.* at 506–07. In *Allen County*, the protestor argued that the deficiency of the penal sum omission did not affect the bid in substance, but only in form, and that it should have been granted an opportunity to cure the deficiency. *Id.* at 505. In its analysis, GAO stated that the purpose of a bid bond is to assure that a "bidder will not withdraw its bid within the time specified for acceptance; it secures the liability of a surety to the government in the event the bidder fails to satisfy its obligation." *Id.* (citing *Hydro–Dredge Corp.*, B–214408, Apr. 9, 1984, 84–1 CPD ¶ 400, 1984 WL 44162). Thus, concluded GAO, "the sufficiency of a bid bond will depend on whether the surety is clearly bound by its terms; when the liability of the surety is not clear,

the bond properly may be regarded as defective." *Id.* It also stated that when a bid bond is required as part of a bid it is material and therefore must be furnished with the bid. *Id.* (citing *Baucom Janitorial Services, Inc.*, B–206353, Apr. 19, 1982, 82–1 CPD ¶ 356, 1982 WL 27850). Accordingly, found GAO, a bidder's submission of a defective bond renders the bid itself defective and nonresponsive. *Id.* at 505–06 (citing *Truesdale Construction Co., Inc.*, B–218094, Nov. 18, 1983, 83–2 CPD ¶ 591, 1983 WL 27642). Moreover, it found the determination as to the acceptability of a bid bond must be based solely on the bid documents themselves as they appear at the time of bid opening. *Id.* at 506 (citing *Central Mechanical, Inc.*, 61 Comp. Gen. 566 (1982), 82–2 CPD ¶ 150, 1982 WL 26666). GAO distinguished the situation presented where the principal fails to sign the bid bond, which GAO classified as a minor informality, from that where the penal amount is omitted. *Id.* GAO found that the relevant inquiry is not whether the surety intended to be bound for the required 20% of the bid amount but rather whether "the surety's obligation has been objectively manifested on the bidding documents so that the extent and character of its liability is clearly ascertainable therefrom." *Id.* Significantly, GAO concluded that the requisite obligation could not be clearly created without inserting a specific penal sum or percentage in the place provided on the bond. *Id.* In support of this conclusion it stated:

> It is a general rule of the law of suretyship that no one incurs a liability to pay a debt or to perform a duty for another unless he expressly agrees to be so bound, for the law does not create relationships of this character by mere implication. *See* 44 Comp. Gen. 495 (1965). Therefore, in the event of default by the bidder in this case,

---

**5.** It is true, as plaintiff points out, that both *Honeywell* and *John Reiner* are cases where the agency was considering a GAO recommendation issued for the specific case at hand. Plaintiff argues that the defendant "has overstated the import of these cases to suggest that government agencies must follow prior GAO rulings in making procurement decisions." Plaintiff's Reply to Defendant's Motion at 10. There is no GAO decision specifically on the instant matter, although there are cases, see discussion *infra*, in-

volving essentially identical facts. This distinction does not, however, have the effect plaintiff suggests. In this case, the agency found plaintiff's bid nonresponsive and relied upon GAO precedent in cases that also involved the omission of the penal sum on a bid bond. This court will review the decision of the agency to assess its rationality, and by extension the GAO cases on which it relied. Whether the agency was compelled to follow GAO precedent is largely irrelevant.

the blank bond could be challenged by the surety, and the purpose of the bid bond would be defeated.

Moreover, we note that the language of the bid bond specifically refers to the liability of the surety as being 'the above penal sum.' The question presented in cases where bonds do not comply with invitation requirements is whether the government obtains the same protection in all material respects under the bond actually submitted as it would under a bond complying with the requirement. *See Ameron, Inc. v. United States Army Corps of Engineers,* [607 F.Supp. 962, 964–65] Civ. No. 85–1064, slip op. at 10–11 (D.N.J. Mar. 27, 1985); *General Ship and Engine Works, Inc.,* 55 Comp. Gen. 422 (1975), 75–2 CPD ¶ 269 [1975 WL 11599]. Where no penal sum is inserted on the bond, no obligation in a sum certain is undertaken by the surety. Therefore the same protection simply is not afforded by a bond lacking a penal sum as would be provided by a fully completed bond. Accordingly, we conclude that the bid bond was defective here, and that the government was required to reject [the bidder's] bid as nonresponsive.

*Id.*

The Comptroller General has followed *Allen County* in subsequent cases and affirmed its decision that the omission of the penal sum on the bond renders the bid bond defective. *See Kennedy Electric Co., Inc.,* B–239,687, 90–1 CPD ¶ 499 (1990), 1990 WL 277996 (stating that it is irrelevant whether the bidder actually intended to submit a bid bond for the required percentage because the relevant inquiry is whether the surety's obligation has been objectively manifested on the bidding documents so that the extent and character of its liability is clearly ascertainable therefrom); *R.D. Construction,* B–232,-714 (1988), 1988 WL 228098; *M/V Constructor Co.,* B–232,572, 88–2 CPD ¶ 272 (1988), 1988 WL 227922; *F & F Pizano,* B–219,591, 85–2 CPD ¶ 88 (1985), 1985 WL 52887 (concluding that a bid accompanied by a bid bond containing no penal sum is nonresponsive because "where no penal sum is inserted on the bond, no obligation in a sum certain is

undertaken by the surety, and the bond is therefore defective").

Plaintiff contends that this line of GAO decisions is irrational because it rests on speculation about the enforceability of a bid bond. Plaintiff contends that it is not suggesting that Interstate or any other bidder should be afforded "two bites at the apple." That is, plaintiff argues, it is not up to the bidder to decide, after bid opening, whether to take further action to effectuate the bond's enforceability. Although plaintiff is correct in stating that the bidder *should not* be able to use the defective bid bond as a means of invalidating a bid bond, there is nothing that *would* foreclose plaintiff or the surety in future cases from asserting the omission of the penal sum as a defense to enforcement of the bid bond if this court found that the omission of the penal sum on a required bid bond does not render a bid defective.

Plaintiff also asserts that the case *Allen* reversed, a Comptroller General opinion provided to the *Secretary of the Interior,* 51 Comp. Gen. 508, B–174, 754, 1972 CPD ¶ 25 (1972), 1972 WL 5888, is logical, should not have been reversed, and should be adopted by this court. In 51 Comp. Gen. 508, GAO focused on the subjective intent of the surety and concluded that a bid bond that omitted the penal sum was valid because "the surety knew the extent of the obligation it was undertaking and that by issuing the bond it manifested its intent to be bound." *Id.* at 509. *See also* B–175,355 (1972), 1972 WL 6928 (finding that because the surety intended to be bound by the bond the omission of the penal sum therein did not render the bid nonresponsive). In this opinion, GAO went on to state:

> To reach a contrary conclusion would require us to ignore the fact of bond issuance and the preceding preliminary acts on the parts of the surety such as signing and sealing the bond form and attaching a power of attorney showing the authority of its attorney-in-fact. Given the surety's prior knowledge of the amount required, these actions must be assigned a reasonable significance which we take to be that

the surety intended to be bound in the required penal sum.

*Id.* at *2.

█ Plaintiff would like for this court to focus, as did GAO in the above-quoted opinion, on the subjective intent of the individual surety to be bound. In support of this argument, plaintiff focuses on the fact that the bid bond at issue in this case was proper in all respects save the omission of the penal sum. This position is, however, problematic, because the government must reject as nonresponsive any bid that fails to conform to the material requirements of the invitation for bids. FAR 14.301(a); FAR 14.404-2. FAR 28.104-4(a) specifically provides that a bid must be rejected for noncompliance with a solicitation requirement concerning bid guarantees. In this case, the solicitation specifically called for the submission of a bid guarantee of not less than 20% of the amount of the bid. Plaintiff submitted a bid bond from which the penal sum of 20% had been omitted. Contrary to plaintiff's assertions that the inadvertent omission of the penal sum does not rise to the stature of a bid that "fails to conform to the essential requirements of the solicitation," plaintiff's bid was plainly noncompliant with the solicitation. FAR 28.104-4(c) sets forth situations in which noncompliance with the solicitation requirements should be waived, none of which are applicable in this case. *See supra.* Significantly, the government's determination as to whether a bid is responsive must be based solely upon the bid documents as they appear at the time of the opening. It would be improper for contracting officers to investigate the legal enforceability of a defective bid bond after the bid is opened. The Federal Circuit made this point in *Lockheed Martin IR Imaging Systems, Inc. v. West,* 108 F.3d 319, 323 (Fed.Cir.1997), wherein it stated that:

> The award is based on the bidder's response to the solicitation, to which the bid must conform. FAR § 14.103-2 states:
>
> No awards shall be made as a result of sealed bidding unless—
>
> \* \* \* \* \* \*
>
> (d) ... [t]he bid is responsive to the terms of the invitation for bids ...

*See also, Honeywell, Inc. v. United States,* 870 F.2d 644, 648 (Fed.Cir.1989) (responsiveness is determined by reference to bids when they are opened). FAR § 14.408–1(c)(5) defines the award as consisting of the response to the invitation for bids and 'any acceptable additions or changes made by a bidder in the bid' which are 'clearly and accurately set forth ... in the award document.' The regulations permit no additions or changes to the invitation for bids by the government after the bid is opened. See FAR § 14.101(d); FAR § 14.208.

█ Clearly, the process of sealed bidding does not afford the opportunity for each bidder that might submit a defective bid bond to manifest its intent post-bid opening. Accordingly, Interstate's failure to submit a properly executed bid guarantee rendered its bid nonresponsive. The government is not permitted to consider Interstate's explanation concerning the defect in its bid bond, and Interstate is not entitled to alter its bid with additional documents following bid opening. Interstate requested FHWA to declare its bid responsive on the basis of Interstate's explanation that (1) the omission of the penal sum was a clerical error; and (2) it had previously executed a proper bid bond, but that it asked the surety to execute a second bid bond because the first one was partially illegible. FHWA was entirely correct in rejecting this request.

Plaintiff argues that the question is not whether the contracting officer may consider evidence going to the responsiveness of a bid after bid opening. Plaintiff argues that "[t]he better question, since the bid bond is only 'defective if it is unenforceable as a matter of law, is whether the contracting officer may investigate the enforceability of the bid bond, after bid opening, to determine whether the bond truly is defective.' It would seem to us, that there is nothing in the GAO ruling, or, the regulations, that would prohibit a contracting officer from conducting an investigation to decide such a *legal issue* after bid opening." Plaintiff's Reply to Defendant's Motion at 11 (emphasis in original). As discussed at length *infra,* however, the

issue in this case is not whether the bid bond would actually have been enforceable. Rather, the issue is whether there was a material defect in the bid bond rendering the bid nonresponsive. As discussed below, it is the view of this court that a bid bond lacking a penal sum is a material defect for the reason that it would provide the surety and the contractor with a defense to enforcement. Moreover, this court is not in a position to speculate as to whether another court would find the bid bond enforceable in the event the surety and/or contractor attempted to avoid enforcement. Therefore, the contracting officer's decision to reject Interstate's bid as nonconforming was rational.

As stated, it is plaintiff's contention that the question this court should consider is whether the bid bond submitted by Interstate actually would have been enforceable. In support of its argument that this court should consider whether the bid bond would have actually been enforceable, plaintiff cites to cases to attempt to establish that its bid bond actually would have been enforceable. Plaintiff relies upon *Butler v. United States*, 21 Wall. 272, 88 U.S. 272, 22 L.Ed. 614 (1874), wherein the Supreme Court found that a surety who privately instructed an internal revenue collector to fill in the blank in an amount less than that the collector ultimately inserted on the bond was liable in the amount actually inserted on the bond. Plaintiff also cites to *United States for the Benefit of Sherman v. Carter*, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957), wherein in resolving an ambiguity as to what payments fit within the specified penal sum the court found that the surety's liability was coextensive with the obligations imposed by the Miller Act. Significantly, however, these cases do not answer the question of whether the bond from which the penal sum was omitted would be enforceable *in this particular case.* They in no way ensure that another court would find the surety or principal liable, as

none of these cases involve the same stringent regulatory scheme in place in the instant matter. Nor do the other state court opinions upon which plaintiff relies. Rather, these cases involve general propositions, and factual patterns distinguishable from those in the case at bar.[6]

Plaintiff argues that because the solicitation number is referenced on the bid bond at issue it is arguable that the bid bond incorporated the 20% penal sum by reference. Nonetheless, the problem still exists that it is questionable whether a court determining the enforceability of the bid bond would deem the penal sum to be included. Accordingly, an ambiguity, and therefore a defense that could viably be asserted by the surety or contractor, exists. For these reasons, this court disagrees with plaintiff's contention that there is nothing about the omission of the penal sum on an otherwise proper bid bond that renders the bond "defective."

Plaintiff's contention that its bid bond is enforceable as a matter of law is also undercut by the plain language of the bid bond. The bid bond provides that "[w]e, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum." AR at 281. This being so, the omission of the penal sum raises a question as to the amount in which the surety is bound. Plaintiff also refers to other language of the bid bond which it states provides "that the obligation is only void if the principal fulfills its expected obligations, that is, executing the contract and providing acceptable performance and payment bonds." Plaintiff's Reply to Defendant's Motion at 12. Plaintiff mischaracterizes this provision insofar as it contends that the language provides that the obligation is *only* void in this particular circumstance. The bid bond does not use the term "only," and although this is a colorable interpretation of the bid bond language it is

---

6. Although, as previously stated, this court will not delve into an inquiry as to whether the bid bond at issue actually would have been enforceable despite the omission of the penal sum, it bears noting that the cases to which plaintiff cites may be distinguished from those in the case at bar. For example, as defendant and intervenor-defendant correctly point out, *Butler* stands

for the limited proposition that the surety incurs liability in the amount of the penal sum stated in the bond because the bond represents the contract pursuant to which the surety undertakes the obligation to pay the stated sum certain. Defendant and intervenor-defendant also make a compelling argument that this is precisely what the GAO recognized in *Allen County.*

not the only plausible interpretation, especially in view of the language stating that the principal and surety are "firmly bound to the United States of America ... in the above penal sum." AR at 281.

Plaintiff further argues that to hold that an otherwise properly executed bid bond is unenforceable simply because the mandated 20% penal sum is omitted overlooks the significance of the reference on the bid bond to the solicitation that requires the 20% penal sum. This argument overlooks the fact that the contract states that the surety will be obligated to the government in the amount of the penal sum. In the view of this court, the omission of the penal sum creates a potential ambiguity and therefore a defense that either the surety or the contractor could raise as a defense to enforcement of the bid bond.

More importantly, however, the question of the validity of the surety's defense is not properly before this court, as plaintiff contends, and this court will not extend its decision beyond the issue that is immediately before it. The agency did not determine the actual enforceability of the bid bond at issue at the time it opened the bid and made a decision concerning its responsiveness. Accordingly, the issue in this case is *not* "whether the simple omission of the penal sum makes the bond unenforceable as a matter of law, thereby rendering the bid bond non-compliant with the FAR requirement that a bid guarantee be furnished." [7] Plaintiff's Reply to the Government's Motion at 6. Significantly, this court has no way of knowing, nor can it dictate, what another court would decide in the event a surety attempted to repudiate its liability on the ground that the penal sum was omitted. The issue before this court is limited to whether the government would receive the same protection in all material respects under the bond as actually submitted. *See* FAR § 14.301(a). This holding is consistent with that espoused by the Court of Claims in *Excavation Construction, Inc. v. United States,* 204 Ct.Cl. 299, 308, 494

F.2d 1289 (1974). In that case, the court found that where an unsuccessful bidder was seeking damages based upon the award of the contract to a bidder with an error in its bid bond, the issue to be addressed was not "what the result of a law suit would be in the event of an attempted disavowal of the bond by either the principal or the surety," but rather "whether the [agency] was arbitrary and capricious in concluding that the error was a waiveable minor informality." *Id.* at 1393, 494 F.2d 1289.

Confining the inquiry before us in this manner is consistent with the principle that this court is clearly not to conduct a *de novo* type analysis of the agency's decision. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). Rather " '[i]f the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.' " *Honeywell,* 870 F.2d at 648 (citation omitted). Further, plaintiff's argument overlooks the fact that the determination of whether a defect in a bid is material is committed to agency discretion. *See* FAR § 14.301; FAR § 14.405. Also, significantly, FAR 28.101–4(a) provides that "noncompliance with a solicitation requirement for a bid guarantee requires rejection of the bid except in the situations described in paragraph (c) of this subsection when the noncompliance shall be waived." The facts of this case do not fall within any of the exceptions delineated in FAR 28.101–4 concerning waiver of noncompliance.

Following Interstate's urgings, the government is thereby exposed to a defense by the surety that would not have existed had the penal sum been properly included. The omission of the penal sum calls into question whether the surety would be obligated. Accordingly, the government finds itself ex-

---

7. Defendant argues that "[i]f there is no penal amount designated on the bid bond, it follows that the surety is not obligated for payment." Defendant's Cross–Motion for Summary Judgment Upon the Administrative Record and Opposition to Plaintiff's Motion for Summary Judgment on the Administrative Record and for Injunctive Relief at 14; 15–16. This argument also focuses on the actual enforceability of the bid bond as opposed to the rationality of the agency's decision and therefore will not be considered.

posed to a significant risk when the penal sum is omitted in an otherwise properly completed bid bond. The government has a clear right to avoid entering into contracts containing ambiguous terms as well as an obvious interest in such avoidance.

The agency's reliance on GAO's position also finds support in the fact that FAR 28.101–2(b) indicates that "[t]he bid guarantee amount shall be *at least 20 percent* of the bid price, but shall not exceed $3 million." (emphasis added). Consequently, agencies have the option of requiring bid guarantees of greater than 20% of the bid price and full protection would not be accorded as a result of an omitted penal amount despite plaintiff's contention that "bonds containing inadvertent omissions of information like the penal sum, the percentage of which is imposed by the terms of the underlying solicitation and by regulation, would be enforced against any party who tried to raise such an inadvertent omission as a defense." Plaintiff's Motion for Summary Judgment at 19.[8] In sum, the agency and GAO reasonably concluded that the same protection simply is not afforded by a bond lacking a penal sum as would be provided by a fully completed bond. This is, doubtless, an unfortunate result for a party which is seemingly well-intentioned, such as plaintiff, but it is because there are unscrupulous contractors that the government must ensure that it is protected.

On balance, as previously stated, to the extent that an agency chooses to follow the advice of the GAO, courts should only intervene if the advice the agency receives is "irrational." *Honeywell*, 870 F.2d at 648. The GAO decisions relevant to this case apply the standards as set forth in the FAR in a manner that is eminently rational.

The conclusion that the GAO's *Allen County* line of cases concerning the omission of the penal sum is rational is buttressed by the fact that in similar cases involving the alteration of a bid bond, GAO has employed an analysis like that in the *Allen County* line of cases and has rejected the notion that the reference to the solicitation number is sufficient to clearly establish the surety's intent to be bound. In *Montgomery Elevator Co.*, B–210,782, 83–1 CPD ¶ 400 (1983), 1983 WL 26716, GAO found that where the penal amount in a required bid bond had been typed over white out, without evidence in the bid documents or on the bid itself of the surety's consent to be bound by the changes, the bid was nonresponsive. Montgomery argued that the change reflected a last minute change in the figure and was made by the surety's attorney-in-fact. GAO found, however, that "[a]n invitation's requirement for the submission of a bid bond involves a matter of responsiveness with which there must be compliance at bid opening and not later. The reason, in part, is that if this situation were otherwise, a bidder who failed to submit a valid bond could decide after bid opening whether or not to cause its bid to be rejected by submitting or refusing to submit the bond." *Id.* at *1. In reaching its conclusion that the bid was nonresponsive, GAO also referred to the principle that in surety law no one incurs a liability to pay a debt or to perform a duty for another unless expressly agreeing to be bound. The bidder argued that the altered dollar amount was not material since the bond still stated that the penal amount was 20% of the bid price. Because, in the view of GAO, the alteration raised a question as to the surety's agreement to the terms, the bid bond was nonresponsive. *Id.* at *1–2 (citing *Baucom Janitorial Serv., Inc.*, B–206353, April 19, 1982, 82–1 CPD ¶ 356, 1982 WL 27850). GAO found that, with the altered bond, the government would not receive the "same protection in all material respects under the bond actually submitted as it would under a bond complying with the requirement" because a surety is discharged from liability on a bond if a material term of the bond was altered without its consent and an altered bond submitted without contemporaneously filed evidence of the surety's agreement to the term does not afford the government adequate protection. *Id.* (citing *General Ship and Engine Works, Inc.*, 55 Comp. Gen. 422 (1975), 75–2 CPD ¶ 269, 1975 WL 11599).

---

**8.** The solicitation in this particular case provided that "[t]he amount of the bid guarantee shall be 20 percent of the bid price or $3,000,000, whichever is less." AR at 49.

GAO has followed this decision in subsequent cases. *See Ameron v. U.S. Army Corps of Engineers,* 607 F.Supp. 962 (D.N.J. 1985) (stating that GAO precedent that the alteration to the penal sum renders a bid nonresponsive is based on rational, established principles); *Pioneer Construction Co., Inc.,* B–227,948, 87–2 CPD ¶ 279 (1987), 1987 WL 102859 (stating that, *inter alia,* an alteration in the penal sum was material as it called into question whether the surety was obligated under the altered bond).

*Carter Construction Co., Inc.,* B–272,109, 96–1 CPD ¶ 293 (1996), 1996 WL 359909, posed a situation similar to that in the cases involving penal sums that had been whited out and typed over. In this case, the bidder protested the agency's rejection of its bid on the basis that it had been altered. The attorney-in-fact had, using the same typewriter, altered the dollar amount figures by "lifting out" the original numbers and inserting the new numbers. The bidder argued that the attorney-in-fact did not initial the documents since she made the changes herself. The GAO found that the bid was properly found to be nonresponsive. In reaching this conclusion, GAO reasoned:

> The failure of a bidder to present an adequate bid guarantee at the time of bid opening renders the bid nonresponsive. *Tri–Tech Int'l, Inc.* B–244289, June 13, 1991, 91–1 CPD ¶ 569 [1991 WL 111183]. Thus, a surety's obligation must be objectively discernable from the bidding documents so that the extent and character of its liability is clearly ascertainable. *Allen County Builders Supply,* 64 Comp. Gen. 505 (1985), 85–1 CPD ¶ 507 [1985 WL 50695].... The surety's assurance that it would honor the altered bid bond has no effect on the agency's determination that its bid bond was defective, because a material defect in a bid bond cannot be explained or affirmed after bid opening. To permit this would place the surety in a position to disavow its obligation, thus compromising the integrity of the sealed bidding system by permitting the bidder to decide after bid opening whether or not to make its bid acceptable. *Southland Constr. Co.,* B–196297, Mar. 14, 1980, 80–1 CPD ¶ 199 [1980 WL 16939].

*Id.* at *2.

In the view of this court, the analysis in these cases concerning the omission or alteration of the penal sum is rational and sound. It makes eminent sense to distinguish a surety's assurance that it would honor an altered or omitted penal sum from the agency's determination that the bid bond was defective, because a material defect in a bid bond cannot be explained or affirmed after bid opening. In these cases, GAO has focused on whether the defect in the bid bond was material. In conducting this inquiry, GAO has looked to the intent of the surety as objectively manifested in the documents at the time of bid opening, rather than the subjective intent of the surety as explained after bid opening. This court cannot find fault with this approach.

The Comptroller General has also found bids nonresponsive in numerous other situations than those involving problems with the penal sum. In these cases, GAO employed a similar analysis as it did in its *Allen County* line of cases concerning the omission of the penal sum and alterations in the penal sum. In *Harrison Contracting Inc.,* B–224,165, 86–2 CPD ¶ 402 (1986), 1986 WL 64231, GAO found a bid nonresponsive on the basis that the bid bond contained a statement conditioning the surety's guarantee on the contractor's acquisition of continued insurance coverage. The Comptroller General stated that when required, a bid guarantee is a material part of the bid, and by its terms must clearly establish the requisite liability of the surety at the time of bid opening or the bid must be rejected as nonresponsive. *Id.* (citing *Tom Mistick & Sons, Inc.,* B–222326, Apr. 3, 1986, 86–1 CPD ¶ 323, 1986 WL 63331). Accordingly, GAO found Harrison's attempts to make its bid responsive after bid opening were ineffective. In *Imperial Maintenance, Inc.,* B–224,257, 87–1 CPD ¶ 34 (1987), 1987 WL 101351, GAO found the bid bond nonresponsive because it was in the form of a letter of credit. GAO found there was a question as to whether the letter of credit could be enforced by the agency and the government would, therefore, not receive

the full and complete protection it contemplated in drafting the IFB. *Id.* at *3. GAO further found the bidder could not submit materials subsequent ·to the bid opening to show that the bank intended to be bound. *Id.* In *O.V. Campbell and Sons Industries, Inc.*, B–216,699, 85–1 CPD ¶ 1 (1984), 1984 WL 47140, GAO concluded that a bid was nonresponsive where the bid bond furnished with the bid listed one surety company on the face of the bond but the corporate seal and attached power of attorney for the signer of the bond was from another surety since it was unclear from the bid documents, including the bond, whether either surety was bound. GAO has also found that where a bid was submitted in the name of a corporation but the bid bond was in the name of a joint venture consisting of the corporation and its president in his individual capacity the bid was materially deficient, and therefore nonresponsive. *Andersen Construction Co.; Rapp Constructors, Inc.*, B–213,955, B–213,-955.2, 84–1 CPD ¶ 279 (1984), 1984 WL 43498. In this case, GAO emphasized that the surety might have been able to successfully argue that it was not bound by the bond. *Id.* at *2–3.· In *H.C. Transportation Co., Inc.*, B–219,600, 85–2 CPD ¶ 207 (1985), 1985 WL 53176, GAO concluded that a low bid was properly rejected as nonresponsive where the bidder furnished a bid guarantee in the form of an uncertified corporate check. Also, in *Matter of A.W. and Associates, Inc.*, B–239,740, 90–3 CPD ¶ 254 (1990), 1990 WL 293765, GAO found that the agency properly concluded a bid was rendered nonresponsive because the bond indicated that it was executed by the bonding agent 3 days before the power of attorney authorized the bonding agent to sign the bond on behalf of the surety. *Id.* at *1. All of these cases demonstrate GAO's overriding concern that the bid bond reflect, at the time of bid opening, the surety's clear and unequivocal obligation to the government.

As plaintiff points out, GAO has also found bids to be responsive in other situations despite various bid bond defects other than those involving the omission or alteration of the penal sum. In these cases, GAO largely followed a similar analysis to that it has consistently applied in all its other cases involving defects in bid bonds, but it reached a different result. For example, in *Brener Building Maintenance Co., Inc.*, B–219,682, 85–2 CPD ¶ 475 (1985), 1985 WL 53448, GAO concluded that a bid was responsive despite the fact that the bid guarantee contained a typographical alteration in the description of work. GAO found that because the typographical alteration did not detract from the liability of the surety it was not material. *Id.* See also *Dragon Servs., Inc.*, B–208,081, 82–2 CPD ¶ 86 (1982), 1982 WL 27149 (analogizing the typographical error on the bid bond characterizing the work to be done as 'construction' in what was actually a services contract to the facts in other cases where the court considered the effect of erroneous solicitation numbers and dates in bid guarantees and concluding that these are not material); *Montgomery Elevator Co.*, B–210,782, 83–1 CPD ¶ 400 (1983), 1983 WL 26716. In *C Construction Co., Inc.*, B–227,640, 87–2 CPD ¶ 226 (1987), 1987 WL 102867, GAO found the bid at issue responsive on the basis that "the block for the date of execution of the bid bond was blank. The court found the absence of the execution date by the principal was not a deficiency that detracts from the liability of the surety." *Id.* at *1. *Harris Excavating*, B–284,820, 2000 CPD ¶ 103 (2000), 2000 WL 760327, involved a suit wherein the protestor claimed that the subject bid was responsive despite the fact the names of the bidding entity (Harris Excavating) and of the principal (Larry Harris, title listed as "owner") on the required bond were different. GAO stated that "[t]he sufficiency of the bid guarantee depends on whether the surety is clearly bound by its terms; when the liability of the surety is not clear, the bond is defective." *Id.* at *3 (citing *Techno Eng'g & Constr., Ltd.*, B–243932, July 23, 1991, 91–2 CPD ¶ 87 at 2, 1991 WL 149673). GAO found, however, that where the entity identified in the principal section of the bid bond is the same as the entity that submitted the bid, any discrepancy between the two names is merely a matter of form that does not render the bid nonresponsive. *Id.* (citing *K–W Constr., Inc.*, B–194480, June 29, 1979, 79–1 CPD ¶ 475 at 2, 1979 WL 12357). It found that extrinsic evidence that is reasonably or publicly available and in existence at

the time of bid opening was properly provided to establish the identity of the bidder and bid bond principal as the same entity. *See also Jack B. Imperiale Fence Co., Inc.,* B–203,261, Oct. 26, 1981, 81–2 CPD ¶ 339, 1981 WL 23193. Similarly, in *Universal Coatings, Inc.,* B–278,700, 98–1 CPD ¶ 70 (1998), 1998 WL 93985, GAO found that a bid bond that mistakenly included language that stated that payment on the bond was contingent upon the bidder entering into the identified contract in lieu of the standard language was enforceable against the surety. The contractor submitted a statement post-bid opening confirming the surety's intent to bind itself unconditionally in accordance with the standard terms. GAO found that the mistaken language was a correctable minor irregularity that did not render the bid nonresponsive. *Id.* at *3. In *Noslot Pest Control, Inc.,* B–234,290, 89–1 CPD ¶ 396 (1989), 1989 WL 237476, GAO found that the omission of a signature on a bid bond by the principal was a minor informality where the unsigned bond was submitted together with a signed bid. *Id.* at *1–2. In *Siska Construction Co., Inc.,* B–218,208, 85–1 CPD ¶ 331 (1985), 1985 WL 50670, GAO found that the absence of a surety corporate seal on the bid bond was a minor informality correctable after bid opening. *Id.* at *1–*4; (citing *Securities Exchange Commission,* B–184120, July 2, 1975, 75–2 CPD ¶ 9, 1975 WL 8298, and B–164453, July 16, 1968).

Plaintiff contends that GAO's decisions in the arena of omitted penal sums are irrational by virtue of GAO's purportedly inconsistent body of case law wherein it found bids responsive despite various defects in the bid bond. This court will not examine the entire body of GAO precedent concerning bid bonds to ascertain whether this body of precedent is as a whole rational and consistent. It may be, in fact, that some of the decisions to which plaintiff cites were in fact wrongly decided and aberrations from the general policy of not permitting the submission of evidence following bid opening. The court also notes, however, that some of the situations in the cases where GAO found bids responsive despite defects with the penal sum may be covered by 48 C.F.R. § 28.101–4(c), in which federal regulation states non-compliance shall be waived unless the contracting officer determines in writing that acceptance of the bid could be detrimental to the government's interest. At any rate, it is not for this court to canvas the entire body of GAO precedent, conduct a post-hoc analysis of particular cases, and determine that because inconsistencies may exist within that body that somehow the agency's decision in this particular case is thereby rendered irrational. Significantly, this court has concluded, upon an examination of the facts of *this particular case* that the agency's decision was eminently rational. This court agrees with the agency's decision that the penal sum is a material term of the contract (the bid bond) and therefore its omission is a material defect rendering the bid nonresponsive.

The state court decisions on which plaintiff relies do not significantly contribute to its argument. *Schindler Elevator Corp. v. Metropolitan Dev. Comm'n,* 641 N.E.2d 653 (1994) is distinguishable from the case at bar. In this case, the court found that a bidder's failure to include the penal sum amount on its required bid bond did not constitute a material variance from the bond requirements. In *Schindler,* unlike in this case, there was a statute providing that a contractor could cure a defect in a bid bond whether the defects and omissions were of form or substance. Accordingly, the city had allowed for the submission of an additional revised bid bond, although the court found that the original bid bond would have been sufficient to bind the contractor. Plaintiff also relies upon *Dillingham Construction, Inc. v. Milwaukee Metropolitan Sewerage District,* 629 F.Supp. 406, 409 (E.D.Wis.1986), wherein the court found that the omission of a penal sum on the bid bond was not material. Significantly, however, in this case, no penal bond was required by state law; the bidder had immediately cured its mistake after learning of the omission; and there was a Wisconsin statute allowing bidders to cure mistakes in their bids. *Id.* at 409–10. These circumstances are not present in the case at bar. In *R.G. Beer Corp. v. Cambridge, Ohio,* 1983 WL 5063 (Ohio App. 5 Dist.1983), the court concluded that the absence of a figure in the space for the penal sum did not render the

bid invalid because under the terms of the bid bond, the surety had made a commitment because it was obligated to pay the entire dollar amount of the bid submitted by the principal. *Id.* This case does not advance plaintiff's position as the court's conclusion that "[a]bsent insertion of the top limit of the penal bond in the bid the contractor is bound to a penal sum equal to the full amount of the bid" is unsubstantiated.

In *R. & B. Builders v. School District of Philadelphia,* 415 Pa. 50, 202 A.2d 82 (1964), the Supreme Court of Pennsylvania found that where the penal sum was left blank and the applicable rules required the submission of a bid equaling at least 25% of the total bid, the bid was still valid. The court found the bond was still valid and enforceable notwithstanding the omission. It also found that "[b]y the omission of a stated penal sum, the liability was in fact enlarged and R. & B. and its surety thereby exposed to pay the entire loss suffered in the event plaintiff failed to enter into a satisfactory performance contract." *Id.,* 202 A.2d at 84. Similarly, in *Rule v. Anderson,* 160 Mo.App. 347, 142 S.W. 358 (1912), the court found that a surety could not repudiate its liability on a bid bond on the ground that the bond was not signed by the contractor. The court stated that bid bonds must be strictly construed and no unreasonable right of forfeiture should be allowed.

*R. & B. Builders* and *Rule* fail to significantly advance plaintiff's position. In the case at bar, plaintiff has presented no compelling evidence that the surety's liability would actually be augmented in the event of the omission of the penal sum other than in *R. & B. Builders.* And at any rate, the inquiry as to whether the surety would *actually* be able to succeed on the merits if it asserted that the penal sum had been omitted is simply not before us. *See* discussion *supra.* Rather, the single, limited question before the court in this case is whether the agency, and by extension GAO, were rational in concluding that the omission of a penal sum renders a bid nonresponsive. Accordingly, it is largely irrelevant in this case whether state courts found, nearly forty years ago and ninety years ago, respectively,

that the liability of the surety and contractor was actually enlarged due to the omission of the penal sum.

Accordingly, plaintiff's reliance on these state court precedents is nonpersuasive and does not measurably advance its position.

**B. Plaintiff's claim for injunctive relief**

Absent a finding that the agency's decision was arbitrary and capricious, an abuse of discretion, or in violation of applicable statutes and regulations, this court need not consider plaintiff's claim for injunctive relief.

**C. Whether this court should issue an order directing the agency how to proceed with any further procurement proceedings**

Plaintiff requests this court to direct the government to reinstate the original solicitation with the plaintiff as the lowest responsible bidder if the court rules that rejection of the bid was improper. The government states in its cross-motion that because Interstate does not cite to any authority that would compel such a result this court should deny Interstate's request. Because, however, the court has found that the agency's rejection of the bid was proper this issue is moot and need not be addressed.

Plaintiff also sets forth an alternative argument that if the court allows the rejection of plaintiff's bid to stand, the procurement should continue as a negotiated procurement since, the agency has already converted the sealed bid to a negotiated procurement and both parties have agreed to participate in the negotiation process. In response, the intervenor-defendant basically complains that plaintiff simply wants whichever outcome best benefits plaintiff.

Intervenor-defendant also argued in its briefs that the agency should complete the acquisition at issue here through sealed bidding, rather than by negotiation and sought for the court to issue an order directing the FHWA to remove an ambiguity from its specifications and then re-solicit sealed bids. However, at oral argument, counsel for Gilbert Western withdrew its request for the

court to issue an order directing the FHWA to remove an ambiguity from its specification and then re-solicit sealed bids.

This opinion has gone into great detail to explain that the agency's rejection of Interstate's bid was correct. Since there has been no showing by either plaintiff or intervenor-defendant that the government's cancellation of the sealed bid procurement was arbitrary, capricious, irrational or contrary to law, this court will entertain no request to either overturn FHWA's cancellation of the original sealed procurement or to presume to dictate to the agency how to proceed with any further procurement proceedings.

For the foregoing reasons, it is hereby **ORDERED** that:

(1) Plaintiff Interstate Rock Products, Inc.'s Motion for Summary Judgment on the Administrative Record and request for injunctive relief is **DENIED**;

(2) Defendant's Cross–Motion for Summary Judgment Upon the Administrative Record and Opposition to Plaintiff's Motion for Summary Judgment on the Administrative Record and for Injunctive Relief is **GRANTED**;

(3) Gilbert Western Corporation's Opposition to Interstate Rock Products, Inc.'s Motion for Summary Judgment upon the Administrative Record and Gilbert's Cross–Motion for Summary Judgment is **GRANTED**;

(4) The Clerk's office is directed to enter judgment for defendant, dismissing plaintiff's complaint with prejudice; and

(5) Each party shall bear its own costs.